BYNUM v. SCOTT et al.

(District Court, E. D. North Carolina.   October 5, 1914.)

No. 23.

BANKRUPTCY (§ 250*)—CORPORATIONS—UNEXPLAINED SHORTAGE OF ASSETS—
LIABILITY OF MANAGING OFFICERS.

Directors of a bankrupt mercantile corporation conducting a store in a
small town, who were also its managing officers, having charge of all of
its business and property, *held* liable to its trustee for a large shortage
in its stock of goods, wholly unexplained by the books which it was their
duty to keep; but another director who had no part in the actual con-
duct of the store and no reason to suppose it was not properly managed,
*held* not liable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350;
Dec. Dig. § 250.*]

In Equity.   Suit by Fred W. Bynum, trustee in bankruptcy of the
Bennett Supply Company, against J. H. Scott, J. W. Purvis, and Eli
Scott.   Decree for complainant against defendants Scott, and in favor
of defendant Purvis.

L. M. Swink, of Winston-Salem, N. C., and H. A. London & Son,
of Pittsboro, N. C., for plaintiff.

R. H. Hayes, of Pittsboro, N. C., for defendants.

CONNOR, District Judge.   The evidence shows that the Bennett
Supply Company was chartered and organized on November 10, 1910,
for the purpose of conducting a general mercantile or supply store, at
Bennett, N. C.   It continued in business until November 30, 1913,
when upon its petition, alleging insolvency, the judge of the superior
court appointed plaintiff receiver of its property.   A short time there-
after, upon the petition of its creditors, the corporation was adjudged
bankrupt.   Plaintiff was duly elected and qualified as trustee, and in
that capacity retained possession of its assets.   Immediately upon his
appointment as receiver, plaintiff, with the active aid and assistance
of defendant J. W. Scott, took an inventory of the goods, merchandise,
furniture, fixtures, and other property of said corporation.   From such
inventory it appeared that the goods and merchandise, upon the basis
of the cost price marked thereon, amounted to $6,764.20; furniture
and fixtures, $314.44; storehouse and lot cost $992.78.   Its indebted-
ness is over $11,000.   In the bankruptcy proceeding an order was
made appointing Jos. B. Cheshire, Jr., Esq., special master, with di-
rection to make an examination of defendants and such other per-
sons as he should think proper touching the condition of the affairs
of said Bennett Supply Company and its assets.   His report was intro-
duced on the hearing of this cause.   It is very full, clear, and enlight-
ening.   He finds that:

"The Bennett Supply Company is a corporation, with its principal place of
business at Bennett, Chatham county, N. C., incorporated November 10, 1910,
with J. H. Scott, subscribing for 20 shares, of the par value of $100 each;
Eli Scott, for 10 shares, par value $100 each; J. A. Purvis, 10 shares, par

value $100 each; and I. H. Dunlap, for 5 shares, of the par value of $100 each. From the formation of said corporation, until it went into the hands of Fred W. Bynum, receiver, on November 30, 1913, J. A. Purvis was president thereof, Eli Scott was vice president thereof, and J. H. Scott was secretary thereof. Its board of directors was composed of J. H. Scott, Eli Scott, and J. A. Purvis. J. H. Scott and Eli Scott were its managers and had control of it; they being, most of the time, the only agents of the company.

"J. H. Scott supervised and kept the books of the company and took off trial balances each month (with a few exceptions, when two or three months would be consolidated, or trial balances for one month omitted), up to February, 1913, when he took no more trial balances and stopped writing up his ledger. The invoices of merchandise, purchased during the year 1913, were missing when the books were audited, and they have not been produced. During the year 1912, the year prior to the receivership year, the company's books show a profit of $1,638.28.

"During 1913 J. H. Scott would send checks of the Bennett Supply Company to the Chatham Bank at Silver City, N. C., have the bank place part of the checks to the credit of the Bennett Supply Company, and return the balance of the checks, in cash, to the company. No cash account was kept of these amounts of money sent the Bennett Supply Company in cash from the Chatham Bank. The officers and managers of the Bennett Supply Company kept no account of actual cash handled in the store, unless such cash was sent to the bank for deposit, when it would appear on the cash book. The actual cash was kept in the safe, and no record made of it, except when put on deposit slip and sent to bank. The managers would leave the store for short intervals of a few minutes, frequently leaving customers sitting around; but they never had cause to suspect any of them of taking anything. About September 1, 1913, and just prior thereto, J. A. Purvis, Eli Scott, and J. H. Scott bought up all of the capital stock of the Bennett Supply Company, not already held by them, except two shares owned by R. L. Bradley."

The special master, upon the testimony of Leslie Abott, an expert accountant who had made an examination of the books, etc., of the company, and other evidence before him, found that, by an inventory taken December 31, 1912, the company had on hand stock of merchandise costing $4,359.32. From the inventories found on file, it purchased goods for cash amounting to $8,393.32, on credit $7,383.76, aggregating, with the stock on hand January 1, 1912, $20,136.37. From January 1, 1913, until November 30, 1913, it sold goods amounting to $8,025.71. The expense of conducting the business at $70 per month was $770, thus accounting for $8,795.71, to which should be added the stock on hand, $6,764.20, leaving a deficit of $4,576.46. In this calculation no profits are charged on the goods sold for cash. There is evidence that goods were sold for a profit of 25 per cent. This, however, is a mere estimate made on this account. This is not included in the above figures. The master finds the facts in regard to the Bennett Milling Company, a corporation, the stock of which was owned by defendants.

It is charged in the bill herein that the assets of the Bennett Supply Company were diverted from that corporation and invested in the property of the Milling Company. Whatever suggestion is made to this effect, based upon the successful operation of one corporation and the insolvency of the other, both belonging to, and managed by, the same persons, seems to be met by the evidence taken on the hearing herein. The record evidence shows the sources from which the money invested in the Milling Company was derived. It is under mortgage for considerable amounts for money borrowed for the purchase money

of the plant. The checks introduced, drawn on the accounts of both corporations, negative the charge that the money of the Supply Company went into the assets or operating expenses of the Milling Company.

Some other explanation must be sought for the admitted deficit in the assets of the Bennett Supply Company. Either the goods and merchandise purchased by the company, and for which it is largely indebted, were sold for cash, of which no record was made and no accounting had, or the goods were taken from the store by some one. There is no evidence that any of the goods were stolen, nor is there any evidence tracing them into the possession of any other person. The only explanation suggested by J. H. Scott, while being examined on the hearing, is that there were more goods in the store than the inventory shows, and that, in taking it, a mistake was made. This is a mere surmise on his part. It is disposed of by the fact that, for a large portion of the time during the taking of the inventory, he was in charge of and assisted in the work, and during the entire time he was present and assisting. Each article, with the cost, is entered on the inventory, and the additions carefully made and verified. The goods have been sold by the trustee, using the inventory as the basis of the sale. Defendant Eli Scott was not introduced as a witness and has never been examined.

The question, therefore, is: Upon whom shall the loss, occasioned by the shortage in the assets, fall? The defendant J. H. Scott is shown to have enjoyed a good character prior to the developments made in this case. He is a man of temperate, economical habits. He gives no indication, either in his appearance or manner, of being extravagant or dissipated. The defendant Eli Scott, for some time prior to the failure, was president, together with J. H. Scott, and actively assisted in the management of the business. The property of the corporation was in their actual possession at all times. As managing officers of the corporation, intrusted with the possession and sale of the corporate property, they owed the duty to the stockholders and creditors to use at least ordinary care to protect it from waste, dissipation, or embezzlement. This duty, the evidence shows, they have failed to discharge. It is settled that, as directors, the defendants owed the duty to the corporation—

"to exercise as much diligence and care as the proper performance of the duties of their office requires. What constitutes a proper performance of the duties of a director is a question of fact, which must be determined in each case in view of all the circumstances. The character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts, must be taken into consideration." Morawetz, Priv. Corp. 552.

It has frequently been said that they are required to use ordinary care, or that degree of care and prudence which is generally exercised by business men in the management of their own affairs. With respect to the duty of the directors of a mercantile corporation, such as the Bennett Supply Company, it would seem that, if they exercised due care in the selection and employment of agents and managers, and thereafter exercised due care in overlooking and supervising such

agents or employés, they are not liable for mistake of judgment, or the wrongdoing of such agents. The persons employed are the agents of the corporation, and not of the directors. It is not expected, or required, of the directors of a small mercantile corporation, that they give their entire time and attention to the conduct of the business. They receive no compensation for their services. When, however, a director is also president and secretary of the corporation, and assumes the actual and sole active management of the business of the corporation, takes its property into his possession, sells, and receives and disburses the proceeds, keeps its books, and buys property in the course of business, a very much higher degree of care is required, or, to state the duty more accurately, ordinary care calls for much more active supervision and oversight of the business and property of the corporation. Such officers receive pay for their services.

This is the attitude of defendants, J. H. Scott and Eli Scott, to the bankrupt corporation. They may be likened to bailees for hire, and liable for a failure to exercise due care in taking care of and accounting for the property placed in their possession. There can be no doubt of the liability of defendants J. H. Scott and Eli Scott for the value of the property of the corporation, the goods purchased by them for the corporation, and for which its money was expended, or liability incurred. Neither the corporation, nor its representatives, is called upon to show what became of the goods which are shown to have gone into the business, been purchased by defendants. The burden of proof is on the defendants J. H. Scott and Eli Scott, upon the uncontradicted evidence, to do so. The defendant Eli Scott has never undertaken even to suggest, and the defendant J. H. Scott does not more than make a surmise as to, the cause of the deficit of more than $5,000. This deficit came about between January 1, 1913, and November 30, 1913. It is significant that after February, 1913, defendant "took no more trial balances and stopped writing up his ledger." The books show that, during the year 1912, the business yielded a profit of $1,638.28, and during the year 1913 a loss of more than $5,000, without any explanation.

The liability of defendant J. A. Purvis is not so clear. There is no evidence connecting him with the management of the business, or of facts calculated to put him upon inquiry, leading to knowledge or suspicion that the business was not being properly conducted. There is nothing in the evidence fixing him with negligence in the selection of his codirectors, as president and secretary, or placing them in control of the property. He owned only 10 shares of the stock, for which it is admitted he paid in full. It would seem that the duty of a director in a corporation conducting a small country store is discharged, so far as the selection of agents is concerned, when he exercises, with the lights before him, ordinary care in their selection. It is well known that an annual inventory and accounting in business of that character is usual. In the absence of any reason suggesting the necessity for doing more, he discharges his duty by following the usual and customary method pursued in business concerns of a similar character. It does not appear that the corporation was sued or

pressed for overdue debts. The inventory and books of January 1, 1913, showed that the business was in healthy condition and making a fair profit. It is true that the company borrowed $1,500 early in the fall of 1913 and executed a mortgage upon its entire property. This money appears to have been properly applied. There was nothing in this act which was calculated to arouse suspicion. It was not unusual, at that season, for a country mercantile business to borrow money. It seems that Mr. Purvis is a farmer, and would not, by simply going in the store, have discovered that any goods were missing; nor is there any evidence that he knew the quantity of goods purchased by the company during the year. There is nothing in the evidence suggesting when the goods were removed or taken from the store. Mr. Morawetz states the measure of liability imposed upon directors:

"The amount of attention and care, which the proper performance of their duties requires, evidently depends upon the character of the business in which the company is engaged." 2 Corp. 551.

Earl, J., in Hun v. Cary, 82 N. Y. 65, 37 Am. Rep. 546, says:

"It is impossible to give the measure of culpable negligence for all cases, as the degree of care required depends upon the subjects to which it is to be applied."

There is a lamentable absence of appreciation, or probably knowledge, on the part of persons who become directors in the numerous business corporations, industrial and mercantile, which are being created and operated. I am unable to find, by the application of the principles laid down by the courts, such negligence on the part of Mr. Purvis in the discharge of his duty as director as fixes upon him a personal liability for the conduct of his codirectors and active managers of the business. They were his brothers-in-law and neighbors. They had the confidence and respect of others, and whatever may be the true explanation of their conduct of the business of the corporation, there is no evidence here which would indicate that they were not regarded as honorable, reliable men when the corporation was organized, or that there was anything in their conduct to cause suspicion until the crash came. While it seems that the business of the Bennett Milling Company has had a fairly successful career, an examination of the bank accounts and production of the checks drawn by J. H. Scott, its secretary and treasurer, fails to disclose any mingling of the funds of the two companies, or application of the funds of the Supply Company to the debts or expenses of the Milling Company. The evidence, regarding the source from which the means employed in procuring the plant and machinery of the Supply Company is not contradicted; on the contrary, it appears to be corroborated by the record evidence.

It is conceded by the plaintiff that a more thorough examination of the books and stockbook than was first made disclosed that full payment was made for all of the stock subscribed and issued. The right of action, vested in the corporation to sue defendants for their breach of duty, passed to the plaintiff as trustee. The assets, including such causes of action of an insolvent corporation, constitute a trust fund

for the benefit of creditors, whose rights are worked out through the corporation. In re Swofford Bros. Dry Goods Co. (D. C.) 180 Fed. 549; Morawetz, Corp. 795.

The plaintiff trustee is entitled to a decree against defendants J. H. Scott and Eli Scott personally for the sum of $4,576.46. This is the amount of shortage found by the special master, and eliminates any element of profits on sales. It gives to defendants the benefit of every possible doubtful question, and adopts figures in regard to which there is no controversy. The bill will be dismissed as to defendant J. A. Purvis. The costs will be taxed against defendants.