### E. L. MOORE & CO. et al. v. MURCHISON.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

No. 1341.

1. CORPORATIONS ☞334—DECLARATION OF DIVIDENDS—LIABILITY OF DIRECTORS.

When directors declare a dividend in good faith and without negligence, they are not liable merely because it turns out to have impaired the capital stock; but it is equally well settled they cannot escape liability when they are in actual charge of the business and ought to know the dividends declared had not been earned.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1452; Dec. Dig. ☞334.]

2. BANKRUPTCY ☞303—ACTIONS—EVIDENCE.

In a suit by the trustee in bankruptcy of a corporation against its directors and officers to recover dividends illegally paid, evidence *held* to show that the directors knew, or by the exercise of care must have known, the dividends were paid out of the capital stock.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ☞303.]

3. CORPORATIONS ☞244—DIVIDENDS—LIABILITY TO RETURN.

Where a married woman, who was a stockholder in a corporation, transferred her stock to her husband, so that he could act as her agent,

---

and he was president of the company, she is liable for dividends wrong-fully paid out of the capital stock, being chargeable with the knowledge of her agent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. ☜244.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston, in Bankruptcy; Henry A. M. Smith, Judge.

Bill by William Murchison, trustee in bankruptcy of E. L. Moore & Co., a corporation, against E. L. Moore & Co. and others. From a decree for complainant, defendants appeal. Affirmed.

F. L. Willcox, of Florence, S. C., W. H. Muller, of Dillon, S. C., M. C. Woods, of Marion, S. C., and P. A. Willcox, of Florence, S. C. (Gibson & Muller, of Dillon, S. C., on the brief), for appellants.

F. H. Horlbeck, of Charleston, S. C., and Louis M. Swink, of Winston-Salem, N. C. (Townsend, Rogers & McLaurin, of Dillon, S. C., Mitchell & Smith, of Charleston, S. C., Kenan & Stacy, of Wilmington, N. C., and R. H. Talley, of Richmond, Va., on the brief), for appellee.

Before PRITCHARD and KNAPP, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. The decree under review holds the appellants, other than Mamie P. Moore, personally liable for the dividends declared and paid while they were respectively directors of E. L. Moore & Co., a South Carolina corporation, which carried on a general mercantile business at Dillon, in that state, and which was adjudicated an involuntary bankrupt in March, 1913. The history of the concern is briefly this:

There was a prior corporation, the E. L. Moore Company, chiefly owned by E. L. Moore, which was liquidated in bankruptcy in the latter part of 1907. There was no appraisal of its assets in the bankruptcy proceedings, but an inventory of the merchandise on hand amounted to $13,786.56, with store and office fixtures of $1,698.25, or a total of $15,484.81. At the sale of these assets Mamie P. Moore, the wife of E. L. Moore, became the purchaser for $7,500. She also bought a few accounts and bills receivable, for which she paid the further sum of $300. Thereafter, in January, 1908, when the new corporation was formed, with a nominal capital of $10,000, Mrs. Moore transferred to it the property thus purchased and received therefor 78 shares of its stock, of the par value of $7,800. Besides this, about $2,500 appears to have been raised by E. L. Moore and other stockholders, which was paid, not into the treasury of the new company, but for certain accounts and bills receivable due to the old concern, and held as collateral by various creditors. In addition to these accounts and bills receivable the Bank of Dillon held a large amount of assigned accounts and bills to secure two notes, of $3,500 and $8,600, respectively. The new corporation assumed the payment

of the $3,500 note and took over the claims which the bank held as security, but with the understanding that the moneys collected thereon, after paying the assumed note, should be applied on the other obligation.

Without going into details, it is enough to say that the entire sum which E. L. Moore & Co. realized from all these old accounts and bills receivable was only $1,657.12, after paying the $3,500 note. Nevertheless these accounts and bills receivable were put upon the books of the new company at their full face value of $19,109.86, while the property transferred by Mrs. Moore, as above stated, was entered, not at the $7,500 she paid for it, but for the inventoried sum of $15,-484.81. In this way it was made to appear that the new concern started off with a surplus of $21,000 and upwards over its liabilities, the note of $3,500 and capital stock of $10,000. In point of fact, the only assets possessed at that time were the old stock of goods and store fixtures, which Mrs. Moore bought for $7,500, and the equity, so to speak, in the accounts and bills receivable, which turned out to be about $1,600.

It is difficult to speak of such a performance with moderation. The so-called surplus shown by these book entries was purely fictitious, and must have been known to be so by those in charge of the concern. There was no pretense of complying with the South Carolina statute (Civil Code of 1912, § 2836), which requires that the value of property for which stock is issued shall be approved by the board of corporators, and the entire organization of the company and conduct of its affairs, so far as they were made matters of record, exhibit a singular degree of looseness and irregularity. If the management of the business was on a par with the bookkeeping, it is scarcely surprising that the corporation became hopelessly bankrupt in about five years, with an indebtedness of $60,000 and assets that sold for little more than 10 per cent. of that amount. Yet during that time dividends of 70 per cent. in the aggregate were declared and paid, 10 per cent. in January, 1909, and 20 per cent. in each January of the next three years.

[1] The question of the liability of these directors for the dividends they declared is essentially a question of fact, and no unfamiliar principles of law are involved. It is well settled that, when directors declare a dividend in good faith and without negligence, they are not to be held liable merely because the dividend turns out to have impaired the capital stock. Reid v. Manufacturing Co., 40 Ga. 98, 2 Am. Rep. 563; Chick v. Fuller, 114 Fed. 22, 51 C. C. A. 648; Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; McDonald v. Williams, 174 U. S. 397, 19 Sup. Ct. 743, 43 L. Ed. 1022. But it is equally well settled that directors cannot escape liability, when they are in actual charge of the business of the corporation, and know, or ought to know, that the dividends they declare have not been earned. Hauser v. Tate, 85 N. C. 85, 39 Am. Rep. 689; Spurr v. United States, 87 Fed. 701, 31 C. C. A. 202; Bynum v. Scott (D. C.) 217 Fed. 122; Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936.

[2] Such in our judgment is the case at bar. The appellant directors were also the officers and agents of the company who had the entire management and control of its operations. E. L. Moore combined the offices of president, treasurer, and general manager; Sprunt was the vice president, in personal charge of the sales; Cottingham was secretary, and in charge of the corporation's books; and Wallace was employed to investigate the financial standing of its customers and debtors. The latter must have known, even better than his associates, that many of the accounts treated as good from time to time in the estimate of assets were against persons from whom little or nothing could be collected. Any intelligent effort to ascertain the real situation of the company would have shown that it was doing a losing business, and that the dividends declared were not only unearned, but paid in fact, for the most part, if not altogether, out of the meager capital which was put in at the outset. We think it impossible to read this record without the conviction that the most ordinary counsels of prudence were disregarded by these directors, and it seems a charitable view of their conduct to hold them guilty of culpable negligence. Upon the facts developed at the trial, not the least significant of which were the admissions of the appellants themselves, we have little difficulty in agreeing with the learned District Judge in his conclusion of fact that, when the dividends in question were paid, the directors voting therefor knew, or ought to have known, that they had not been earned, and were not warranted by actual conditions which could have been easily ascertained. There is certainly no showing here which would justify us in setting aside the findings upon which the decree against the appellants is predicated, and it follows that no error was committed in holding them liable. ·

[3] As to the appellant Mamie P. Moore: It appears that the 78 shares of stock originally issued to her were transferred to her husband in January, 1910, after the payment of the 10 per cent. dividend, and it may be assumed that the transfer was regular on its face and in compliance with the forms of law. The decree against her directs the return to the trustee in bankruptcy of all the dividends declared on these shares, including those declared after the certificate was put in the name of her husband; and her liability therefor is based upon a finding that there was no real change of ownership of the shares, that the transfer was made solely for the purpose of enabling her husband to act more conveniently and completely as her agent, that she retained the beneficial ownership of the stock, that she was chargeable with the knowledge possessed by her husband of the real condition of the company, and that therefore she is not an innocent stockholder who received dividends in good faith and under the belief that they were properly paid.

This, also, was a question of fact, and we are satisfied, after careful examination of the record, that the evidence warranted the conclusions of the trial court. It would serve no useful purpose to refer in detail to the testimony upon this issue, which is exhaustively reviewed by the learned District Judge, and we therefore deem it sufficient to say that no convincing reason appears for disturbing the

findings, which, if accepted, establish beyond serious doubt the liability of Mrs. Moore. There was no attempt in her behalf to show the purpose or consideration for the transfer of this stock to her husband, if the purpose was not merely to facilitate his acting as her agent, and the circumstances relating to the transfer, in the absence of other explanation, justify the inference that the transaction was not intended to effect a change of ownership. In view of the relations between Moore and his wife, the complete extent to which he represented her in all matters connected with the corporation and its business, and her admitted ignorance of what was done in her name, she is clearly chargeable with the knowledge he had of the company's condition. That knowledge was within the scope of his agency, and she cannot justly retain as her own the moneys he had no right to receive for her.

We are of opinion that the case was correctly decided, and the decree will therefore be affirmed.