Benjamin Forster, Appellee, v. Sheridan Trust & Savings Bank, Executor of the Estate of George W. Walker, Deceased, Appellant.

Gen. No. 33,588.

Opinion filed May 14, 1930.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellant; WEYMOUTH KIRKLAND, VERNON M. WELSH and J. B. CLEAVER, of counsel.

MEIER & POORMAN and SIMON T. SUTTON, for appellee.

MR. JUSTICE RYNER delivered the opinion of the court.

Two points are presented for our consideration by the brief of the defendant, who brings this appeal. One is whether the release of one party discharged the other parties, interested in a land syndicate, and the other is as to the competency of certain witnesses, interested in the syndicate.

The defendant is the executor of the estate of George W. Walker, deceased. The claimant presented a claim against the estate which was allowed by the probate court of Cook county in the sum of $5,000. Upon an appeal to the circuit court of Cook county the cause was tried *de novo* with a jury. The result was a verdict and judgment in favor of the claimant. The judgment was entered on March 30, 1929.

William F. Behrens, called as a witness for the claimant, testified that he and Walker had been engaged in

the real estate business. He identified a check made payable to his order for $5,000, which was signed by the claimant and delivered by the witness to Walker. He further testified, on cross-examination, that he and Walker were partners in all real estate deals; that the transaction, as a result of which the check was given, involved the purchase for a proposed syndicate of 400 acres of land, situated near Momence, Illinois, and that he had no interest in it except that of receiving a commission.

He also testified that he and Walker were both interested in the property; that he (Behrens) was doing the active work in connection with organizing the syndicate. It appears from the evidence that the object of the syndicate was to purchase the land and then sell it at a profit.

According to the testimony of Behrens the claimant gave him a check for $5,000, "because he was sold on the proposition"; that Walker retained the money but that the claimant did not become a member of the syndicate because the deal was never consummated. He also identified a document executed by the claimant, during the proceeding in the probate court, releasing him from liability on account of the $5,000 check, and containing a covenant not to sue. He further stated that the claimant understood that he (Behrens) had no interest in the syndicate except to receive a commission.

Behrens was recalled to the witness stand and testified that he said to Walker, "I got five thousand dollars from Benjamin A. Forster (the claimant) to put into this syndicate at Momence at the original cost"; that Walker picked up the check and said, "indorse it," which the witness did; that he was present at a conference when the claimant said to Walker, "Where is my five thousand dollars" and that Walker replied, "Why, I have it Forster. I will either return it to you in ten days or give you a syndicate agreement."

He also stated that the commission in which he was interested was to be paid by the owner of the land; that he gave Henry Schultz, who was interested in the transaction, $2,000 and made a deposit of $5,000 and that he was reimbursed for the deposit by Walker; that a Mr. Trankel was a partner with Walker and himself; that the plan of the partners was to form a purchasing syndicate and also a selling syndicate, and to divide the commissions; that one McCarthy invested $10,000 in the second or selling syndicate, which sum the witness voluntarily refunded to McCarthy; that he had engaged in syndicate transactions with Walker involving lands of a total value of $18,000,000 and that he turned over all moneys coming into his hands to Walker.

Shirley A. Cowing was a witness for the claimant. On cross-examination he testified that he and his brother invested $5,000 in the proposed syndicate and that they had a claim against the Walker estate for that amount. He, upon resumption of his direct testimony, testified to a conversation at which were present Trankel, Forster, the claimant, Behrens, Walker, himself and Walker's secretary, that the claimant asked when he would get his syndicate papers, and that the conversation was as follows:

"Mr. Walker said, 'We will have the papers in a day or a couple of days,' and Mr. Forster (the claimant) asked him who was handling the money in the syndicate, Mr. Walker said he was, and that he had the money. He said, 'Mr. Walker, I will either give you your money within ten days or I will give you your syndicate papers, one or the other.' "

The witness further said that the same statement and promise had been made to him by Walker and that the claimant had agreed to become a witness in his behalf when he (Cowing) prosecuted his claim against the Walker estate.

The mere fact that Cowing had a claim against the Walker estate, or that the claimant had indicated his willingness to be a witness for Cowing, did not render the latter incompetent to testify.

In the case of *Ackman v. Potter*, 239 Ill. 578, the Supreme Court of this State said: "To render a witness incompetent he must, in general, have a legal interest in the event of the suit, and such interest must be certain, direct and immediate, otherwise his interest goes to his credibility and not to his competency. (*Illinois Mutual Fire Ins. Co. v. Marseilles Manf. Co.,* 1 Gilm. 236; *Curtenius v. Wheeler,* 5 id. 462.) A witness is not rendered incompetent by reason of the existence of an inchoate right of dower which depends upon the contingency that he survive his wife. *Pain v. Farson,* 179 Ill. 185.''

In the case of *Bellman v. Epstein*, 279 Ill. 34, the administratrix of the estate of Henry J. Bellman, deceased, brought suit upon a note executed by Max Epstein. The only defense relied upon was that Epstein had paid the amount of the note to Elias Mayer, by authority of Bellman, in discharge of a debt of Bellman to Mayer. In holding that Mayer was a competent witness for the defendant, the court said: "The interest which disqualifies a witness must be some legal, certain and immediate interest, however minute, either in the event of the cause itself or in the record as an instrument of evidence in a subsequent action to which he is a party against him or in support of his own claims. The interest of the witness must be in the event of the cause itself and not in the question to be decided," and again: "If the plaintiff succeeded and obtained judgment against Epstein the judgment would have no direct and immediate operation or effect regarding any claim of Epstein against Mayer for the money paid. In case of the defeat of Epstein in the suit any alleged claim he might have against Mayer

could only be determined in a subsequent action. If the plaintiff should be successful in overcoming the defense of payment and the defendant should sue Mayer and offer the record in evidence, it would be offered against a stranger to the suit in which it was rendered. . . . The judgment in the suit to which Mayer was not a party not being an adjudication of his liability in a possible subsequent action of the defendant against him, the record would not be legal evidence for or against him and he was a competent witness."

Counsel for defendant contend that neither Cowing nor Behrens was a competent witness. They frankly admit that they have been unable to find any authority directly in point to support their contention. But grant that the question of Behrens competency is a doubtful one, we consider any objection to his competency was waived in the trial court. Counsel must have known, as a result of the trial in the probate court, the business relationship existing between the witness and Walker. If they did not know it, enough was disclosed upon the direct examination of the witness to apprise them that a question as to his competency might arise.

But counsel, instead of immediately asking permission of the court to examine the witness on his *voir dire,* proceeded to cross-examine him at length, in the presence of the jury. The law will not permit a party litigant to speculate as to whether the testimony of an incompetent witness may be favorable to him and then, when he discovers that it is unfavorable, raise the objection that the witness was incompetent.

In the case of *Chicago Title & Trust Co. v. Sagola Lumber Co.,* 242 Ill. 468, the court stated the rule to be as follows:

"Where a party is aware of grounds that disqualify a witness, he cannot be permitted to sit by and speculate as to the character of the evidence and afterwards

object to the competency of the witness if his evidence turns out to be unfavorable to him. A party against whom a disqualified witness is offered may object and bring the matter to the attention of the court before the evidence is given, or he may, if he sees proper, waive the disqualification and permit the witness to testify, and by failing to make his objection in apt time he is presumed to have waived his right. (1 Greenleaf on Evidence, sec. 421.) A party cannot afterwards raise the question of the incompetency of a witness by a motion to exclude his evidence if the grounds of exclusion were known to him at the time the evidence was given. (*Hanford v. Obrecht,* 49 Ill. 146; *Chicago Union Traction Co. v. May,* 221 id. 530.) Appellant knew that O'Callaghan was dead, and when the witness Browne was asked with reference to the conversation the objection to his competency should then have been made. We do not think that appellant has properly waived this question for review." See also *Rosengren v. Manufacturers Nat. Bank,* 220 Ill. App. 608, where the court quoted from Greenleaf on Evidence as follows:

"In regard to the time of taking the objection to the competency of a witness, on the ground of interest, it is obvious that, from the preliminary nature of the objection, it ought in general to be taken before the witness is examined in chief. If the party is aware of the existence of the interest, he will not be permitted to examine the witness, and afterwards to object to his competency, if he should dislike his testimony. He has his election, to admit an interested person to testify against him, or not; but in this, as in all other cases, the election must be made as soon as the opportunity to make it is presented; and failing to make it at that time, he is presumed to have waived it forever."

In the instant case no specific objection as to the competency of either witness was made. During the cross-

examination of Cowing, counsel said that they contended that both witnesses had such an interest as would disqualify them under the statute, but no motion was made to strike the testimony of either.

There is another reason why the defendant should not be heard to complain of the incompetency of witnesses. The principal ground urged for a reversal of the judgment of the trial court is that Behrens was a partner of the deceased and that, therefore, the release given to Behrens had the legal effect of releasing the estate. The only basis tending to support the contention that there was a partnership rests upon facts and legal conclusions developed upon the cross-examination of Behrens and Cowing. Certainly counsel cannot use evidence to serve their purpose and, in the same breath, say that it ought not to be considered because of the incompetency of the witnesses furnishing it, and at their instance.

We come now to the consideration of the legal effect to be given to the so-called release. It is not set out literally or in substance in the abstract, and, under the rules of this court, we could wholly disregard it. An abstract is the pleading of the party who files it and a reviewing court is under no obligation to search the record for the purpose of discovering grounds for the reversal of a judgment or decree of a trial court. We have, however, examined the transcript of record and find that instrument, in question, is as follows:

"For and in consideration of the sum of One Dollar ($1) this day in hand paid to the undersigned, the receipt of which is acknowledged, and for other good and valuable considerations, likewise acknowledged, the undersigned does hereby release, discharge and forever acquit William F. Behrens of and from any account, claim and demand arising out of a certain check dated January 19, 1926, signed by the undersigned, made payable to the order of the said William

F. Behrens, in the principal sum of $5,000; and for the same consideration, the undersigned does hereby covenant with the said William F. Behrens that the undersigned will not at any time hereafter bring any suit or action against the said William F. Behrens for the collection of the principal and the interest, because of the said check.

"Dated at Chicago Heights this 22nd day of November, A. D. 1927.

(Signed)   Benjamin A. Forster."

It will be noted that the document recites only a nominal consideration and is not under seal. The first part of it purports to be a release but it concludes with a covenant not to sue. Upon the trial in the circuit court counsel for the claimant offered to stipulate that the instrument was executed during the trial of the claim in the probate court and at the direction of Judge Horner for the purpose of removing any question as to the competency of Behrens. The response of counsel for the estate was, "We might also want to use it as a part of our defense. We cannot stipulate for the purpose it was given in Judge Horner's courtroom."

In their brief counsel for the estate say: "It appears that the release in question was executed and delivered while a hearing on this claim was in process in the probate court of Cook county. No explanation is given in the record as to why a release was given at this particular time."

We think it is evident, from all the facts and circumstances, that the so-called release was executed and delivered for the sole purpose of attempting to remove any doubt as to the competency of Behrens as a witness in the probate court. Behrens testified that he thought the document was executed in the anteroom of Judge Horner's court room. He further said that, at the time, he had been sworn as a witness and was testifying in the probate court with reference to the

claim involved on this appeal. Certainly it was not the intent of the claimant to release the estate at the very moment he was engaged in prosecuting his claim against it.

Many authorities are cited, by counsel for the estate, holding that a party executing a release is bound by the legal effect of the words used regardless of ignorance of their import or of an intention to accomplish a different result. To apply the strict rule to the instant case, would, in our opinion, result in an injustice. We think that the rule stated in *Parmelee v. Lawrence,* 44 Ill. 405, is applicable to the facts in this case. The court there said:

"On the question as to the effect of this release, counsel for appellants have cited the cases of *Benjamin v. McCormick,* 4 Gilm. 536, and *Rice v. Webster,* 18 Ill. 331. It will be observed from what we have already said that there are facts in this case which widely distinguish it from either of those. We would further add that the weight of the modern authorities is against these cases, and in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue. Parsons, in his work on contracts, volume 1, page 24, uses the following language: 'But though the word "release" be used, even under seal, yet if the parties (the instrument being considered as a whole, and in connection with all the circumstances of the case and the relations of the parties) cannot reasonably be supposed to have intended a release, it will be construed as only an agreement not to charge the person or party to whom the release is given, and will not be permitted to have the effect of a technical release; for a general

covenant not to sue is not of itself a release of the covenantee, but is so construed by the law to avoid circuity of action; and a covenant not to sue one of many who are jointly indebted does not discharge one who is a joint debtor to the covenantor, nor in any way affect his obligation.' "

The decedent, Walker, received $5,000 from the claimant, Forster, in his lifetime, acknowledged that he had the money and promised to return it or deliver to the claimant evidence of an interest in the proposed syndicate. The syndicate was never formed and the money was not returned. We perceive no justifiable reason why, under the facts and circumstances, the claimant should be mulcted of $5,000 and Walker or his estate unjustly enriched to that extent.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

WILSON, P. J., concurs.
HOLDOM, J., not participating.