## UNITED STATES v. WAINER.
### No. 10964.

United States Court of Appeals
Seventh Circuit.
March 31, 1954.

Maurice J. Walsh, Chicago, Ill., for appellant.

H. Brian Holland, Asst. Atty. Gen., Carolyn R. Just, Sp. Asst. to Atty. Gen., Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Ellis N. Slack, Sp. Assts. to Atty. Gen., Otto Kerner, Jr., U. S. Atty., John A. Looby, Jr., Asst. U. S. Atty., for appellee.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an action by the United States to recover, with penalty and interest, taxes assessed on distilled spirits and alcohol seized at an illicit, unregistered distillery in which it is alleged the tax-payer, Allen M. Wainer, had a proprietary interest. The District Court entered judgment in favor of the United States, and from this the taxpayer appeals.

The testimony of Government witnesses and Government exhibits received in evidence disclose the following facts: On or about September 26, 1935, investigators of the Alcohol Tax Unit seized an illicit and unregistered distillery on premises known as the Riley Farm in Will County, Illinois, near Joliet. The seizure included 69,400 gallons of mash, a large quantity of alcohol in vats and 560 gallons of alcohol in cans which bore no revenue stamps, on none of which tax had been paid.

At the November, 1936, Term of the United States District Court for the Northern District of Illinois, an indictment was returned against Allen M. Wainer and others, including one Harry Braverman, setting forth certain offenses relating to the operation of this distillery. In the several counts of the indictment relevant here the defendants were charged, in summary, with having in their possession an unregistered distillery; with engaging in the business of distilling spirits without posting a sign designating registration; with carrying on the business of a distiller without having given bond; with making and fermenting 69,400 gallons of mash fit for the distillation and production of spirits in the unauthorized distillery; with carrying on the business of a distiller of spirits and defrauding the United States of tax on the distilled spirits; with removing, depositing and concealing 560 gallons of distilled spirits upon which a tax was imposed

with intent to defraud the United States of such tax; and with having in their possession 560 gallons of distilled spirits, the immediate containers of which did not have the required internal revenue stamps.

Upon his arraignment in 1937, Allen M. Wainer, the taxpayer here, pleaded guilty to the charges contained in the indictment and sentence was duly imposed.

In 1938 the Commissioner of Internal Revenue assessed against the taxpayer and Harry Braverman, jointly and severally, taxes on specified proof gallons of alcohol, proof gallons of alcohol in mash, and wine gallons of miscellaneous distilled spirits produced at the unregistered distillery. The total assessment amounted to $31,911.20.

The taxpayer signed waivers extending the period within which collection could be made by a proceeding in court, first to December 31, 1947, and again to December 31, 1950. The complaint in this case was filed in December of 1948.

In the course of the Government's evidence it was revealed that a $5,000 offer in compromise submitted by Harry Braverman had been accepted in 1941. After all the testimony was completed, the taxpayer moved to amend his answer to allege that he was released from liability by the acceptance of this offer in compromise. The District Court denied this motion in a memorandum allowing the taxpayer credit for the $5,000 received by the Government from Braverman, but holding that he was not released from liability for the balance of the tax assessed and remaining unpaid.

The principal questions presented here are whether the taxpayer had such a connection with the distillery as to be liable for the taxes assessed, and whether the release of Braverman by the acceptance of his offer in compromise effected also the taxpayer's release. The applicable statutory provision states, in part:

" * * * Every proprietor or possessor of, and every person in any manner interested in the use of, any still, distillery, or distilling apparatus, shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom. * * *" Rev. Stat. § 3251 (now contained in 26 U.S.C.A. § 2800(d).

■ We think the record in this case leaves no doubt that the taxpayer was properly assessed for the taxes here involved. By his plea of guilty to the indictment in the criminal proceeding, he necessarily admitted engaging in the business of distilling spirits, possession of the distillery seized, and the production of distilled spirits from that distillery, upon which the taxes assessed were imposed. Consistent with these admissions is the evidence that the taxpayer caused to be hauled to a warehouse in Joliet, near which the distillery was located, large quantities of sugar and other products used in the manufacture of distilled spirits and cans similar to the containers used at the distillery, and the evidence that he hired a trucker to haul alcohol from this same warehouse. This was amply sufficient to show that the taxpayer, in the language of the statute, was a "proprietor or possessor of" or a "person in any manner interested in the use of" the distilling facilities.

■■ There is no merit in the contention that the plea of guilty to the indictment was not admissible as evidence tending to show the taxpayer's connection with the distillery. Certainly the record of a party's conviction in a previous criminal proceeding may properly be admitted in evidence in a civil action arising out of the same factual situation. Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Austin v. United States, 7 Cir., 125 F.2d 816; Stagecrafters Club, Inc., v. District of Columbia Division, D.C., 111 F.Supp. 127; United States v. Bower, D.C., 95 F.Supp. 19; V Wigmore, Evidence, Sec. 1671a (3d ed. 1940). Of course, where the judgment of conviction has resulted

from a trial and a verdict of guilty, only those issues which were indispensable to the verdict may be regarded as having been determined. This is the principle adhered to in Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, upon which the taxpayer here relies. However, that case involved the proper significance of a criminal judgment obtained after trial and a verdict of guilty as to membership in a conspiracy. Obviously a general verdict of guilty, or for that matter the entry of a plea of guilty, on a count for conspiracy does not determine which of the particular means charged in the indictment were used to effectuate the conspiracy.

In this case we are concerned with the admission of a judgment of conviction resulting from the taxpayer's plea of guilty, but we do not consider the charge of conspiracy to be relevant. The indictment to which the plea was entered was in ten counts. Each of those except the last contained a substantive allegation of particular facts. At least seven of those allegations, if true, tended to show the taxpayer's direct interest in the distillery and its product, a relationship sufficient to sustain the Government's claim in this case. His unqualified plea of guilty was competent evidence to be considered in the determination of the issue and was sufficient to establish his true status as a participant in the operation of the distillery. Therefore, we think the District Court properly admitted and considered these admissions as evidence tending to show liability for the assessment.

After the taking of evidence in the trial had been concluded and the court had announced its tentative conclusion to find for the plaintiff and to allow credit to the defendant for the $5,000 compromise payment by Braverman, counsel for Wainer stated that he wanted to submit authorities to show that the compromise with Braverman wiped out the entire debt. Thereafter, as we pointed out above, the defendant filed a motion to amend his answer by the addition of a paragraph alleging that the tax liability charged in the complaint was a joint liability against Braverman and the defendant; that the proof offered by the plaintiff showed that Braverman was released from liability on the assessment pursuant to his offer in compromise which was accepted by the plaintiff; and that, as a result, the liability against the defendant Wainer had also been released. The trial court refused to grant the defendant's motion to so amend his answer on the theory that 26 U.S.C.A. § 2800(d), which provides that all persons involved in such a distillery operation shall be "jointly and severally liable for the taxes", gives the Government the right to proceed against each of the debtors individually "until satisfaction of the tax is fully obtained"; and that a release of one of the debtors, therefore, extinguishes only his liability and does not satisfy the whole tax liability.

In its findings of fact the District Court found that the Government, on or about July 8, 1940, accepted an offer from Braverman in the sum of $5,000 in compromise of his tax liability on the Illinois assessment, and that that amount should be credited on the assessment as of the date it was accepted.

■ It is true that remedies against each of several debtors may be pursued where the debt is joint and several, but it does not necessarily follow that the creditors may compromise with and release one of the joint and several debtors without releasing the debt. The common law rule is that a release of one of two or more joint and several debtors releases all unless the creditor reserves his rights against those not expressly released. 76 C.J.S., Release, § 49, page 678. The Illinois courts have apparently followed this rule, but not without exception.

In the early case of Parmelee v. Lawrence, 44 Ill. 405, it was held that a written release of one of several obligors which provided that the release should not affect the creditor's rights against the other obligors should be construed as a covenant not to sue the one released

and that it, therefore, did not release the others. This decision was cited and the same rule applied in Forster v. Sheridan Trust & Savings Bank, 257 Ill.App. 463, 472. See also Mueller v. Dobschuetz, 89 Ill. 176; Dupee v. Blake, 148 Ill. 453, 456, 35 N.E. 867; Nickerson v. Suplee, 174 Ill.App. 136; Aiken v. Insull, 7 Cir., 122 F.2d 746, 751.

Two early Illinois cases, Rice v. Webster, 18 Ill. 331 and Benjamin v. McConnel, 4 Gil. 536, 9 Ill. 536, indicated a contrary rule. In the Mueller case, supra, in a footnote to the opinion, it was pointed out that those two early cases expressed a different view, but that the later Parmelee case had said of those two cases, 44 Ill. at page 413:

> "We would further add that the weight of the modern authorities is against these cases, and in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face, and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue."

In Aiken v. Insull, 7 Cir., 122 F.2d 746, 751, this court, citing the Parmelee case, pointed out that the harsh rule as to the release of one of several tort-feasors constituting the release of all does not apply to a case involving the release of one of several joint debtors where the language of the release indicates a different intention. The facts in Reconstruction Finance Corporation v. Central Republic Trust Co., 7 Cir., 128 F.2d 242, relied on by the defendant, distinguish that case from the instant case. There the court was considering liability arising from breaches of trust by a corporate trustee and this court held that the allowance of the claim against the trustee in the state court proceeding was conclusive against the stockholders as well as against the trustee as to the existence, validity and amount of the claim. In Bryan v. Creaves, 7 Cir., 138 F.2d 377, the question concerned the release of joint tort-feasors, not the release of all joint debtors, by the release of one.

■■ The plaintiff contends that in this case we must look to the Federal law, rather than to state law, for the determination of this Federal tax liability. But here the Federal law in describing the liability simply provided that it should be "joint and several," words which then had an established and definite common law meaning. In the section governing the compromise of such liability Congress could have provided, but did not, that the release of one of the obligors should not discharge the other. We must, therefore, look to the common law to determine the effect of the release of less than all of the several joint obligors. From our investigation of the common law, with which the Illinois decisions seem to be in substantial agreement, we are convinced that in this case if the release of Braverman was without any savings clause to show that the intention of the parties was to keep alive the liability of Wainer, the release of Braverman must be considered as also releasing Wainer.

If, on the other hand, the release given to Braverman showed by its language that the parties intended that the release should not operate as to Wainer's liability, Wainer is still liable, and the $5,000 paid by Braverman should only serve to reduce the total debt by that amount as of the time of its payment, and Wainer is liable for the balance remaining unpaid.

■ But since the release in question is not a part of the record before us, we have no way of knowing what, if any, provision it contained for preserving the liability against Wainer.

This leaves us no alternative other than to reverse the judgment of the District Court and to remand the cause with instructions to permit the defendant to amend his answer by pleading the release and for such further proceedings as may be appropriate but not inconsistent with the views herein expressed.