(No. 14401.—Reversed and remanded.)

JOSEPH T. RYERSON & SON, Appellant, vs. THOMAS J. PEDEN et al. Appellees.

*Opinion filed April 19, 1922—Rehearing denied June 7, 1922.*

1. CORPORATIONS—*stockholders are liable if property taken for subscription for the capital stock is over-valued—burden of proof.* Payment for capital stock with property is payment only to the extent of the true value of the property, and if the property of an old corporation is turned in for the capital stock of the new one at an over-valuation, the stockholders, if the corporation fails in business, are liable to make up the deficiency, and the burden is on them to show that such property equaled the value of the capital stock.

2. SAME—*decisions of State court are controlling in construing Corporation act.* The decisions of the State rather than Federal courts are controlling in the construction of the Corporation act as to the rights of creditors as against stockholders of a corporation.

3. SAME—*liability of stockholders for over-valuation of property may be enforced directly by creditors—bankruptcy.* Where a corporation is re-organized into a new company, the property of the old company being turned over to the new in full payment of the subscriptions to the capital stock in the new company, the liability of the stockholders because of the over-valuation of said property may be enforced directly by creditors after the failure of the corporation, and the right to enforce such liability is not an asset of the corporation to be turned over to the trustee in bankruptcy. (*Lane* v. *Nickerson,* 99 Ill. 284, distinguished.)

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ERIC WINTERS, for appellant.

R. C. MERRICK, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, Joseph T. Ryerson & Son, a creditor of the South Chicago Architectural Iron Works, thereafter re-organized as the Illinois Architectural Iron Works, filed its

second amended bill in equity in May, 1919, against said company and all its stockholders, charging that the company ceased doing business leaving debts unpaid; that the stockholders of the company, while acting as directors, had accepted from themselves property in full payment of their subscriptions for stock which was of far less value than the par value of the stock for which they had subscribed, and therefore, under the provisions of the Illinois Corporation act, the company and stockholders were liable. All of the defendants to the bill answered, admitting the indebtedness of the company to appellant but averring that they were not guilty of any fraud in incurring the same; averring that the property turned over by the subscribers in payment for their stock was of the full value of the stock for which it was turned over; that in May, 1913, the company was adjudged a bankrupt and a trustee was appointed and the estate was fully administered and distributed by him among its creditors, and that any right of action against the stockholders on account of any alleged over-valuation of the property given in payment of subscriptions to stock passed to and was vested in the trustee in bankruptcy. The cause was referred to a master in chancery, who reported recommending that the bill be dismissed for want of equity. Objections filed to the report were overruled and filed as exceptions in the superior court. These exceptions were overruled and a decree entered September 26, 1919, dismissing the bill of complaint for want of equity, at complainant's costs. On appeal to the Appellate Court the decree of the superior court was affirmed and a certificate of importance granted by that court, upon which this appeal was brought to this court.

The evidence shows that the South Chicago Architectural Iron Works was organized to engage in the business of manufacturing and dealing in architectural ironwork, with a capital stock of $10,000, fully paid up, which was later increased to $25,000, and was held by six different

persons and fully paid.   It appears further that it was de-
cided to increase the capital stock, and a new corporation
was formed called the Illinois Architectural Iron Works,
with a capital stock of $50,000, having the same persons
as stockholders.   When the new company was incorporated
it appears that the former company, in March, 1912, turned
over all its property to the new company in payment of the
capital stock subscribed for by the stockholders in the first
company in the Illinois Architectural Iron Works; that the
company just organized took over the property, but with
the obligation that it would "assume and pay all outstand-
ing obligations of every kind" of the former company.   In
obtaining its charter no mention was made by the new com-
pany of the fact that it was to "assume and pay all outstand-
ing obligations" of the old company, and it was recited in
the charter of the new company that there was none of the
$50,000 capital stock that was not paid in full.

It is contended on the one hand that the testimony
found in the record shows that there was an over-valuation
placed upon the property and assets of the South Chicago
Architectural Iron Works, which has resulted in a fraud
upon the creditors and makes the stockholders liable under
the provisions of the Corporation act.   On the other hand,
it is argued that there is nothing shown in the testimony
to indicate that the stock was not fully paid for or that
there was any dishonest attempt to over-estimate the assets,
and that nothing is shown which tends to prove fraud.   The
same stockholders, directors and officials owned and con-
trolled the original company that owned and controlled the
new company.   The Illinois Architectural Iron Works was
organized with a larger capital stock to conduct the same
business theretofore operated, and the stock was taken by
the stockholders of the new company in about the same
proportion as they held in the old company, except that
125 shares were not paid for in cash, which stock was
called treasury stock and taken by the treasurer as trustee,

for the use of all the subscribers. The reported assets at the formation of the new company were as follows: Real estate, $22,000; machinery and tools, $9500; stock of metals, manufactured iron and other merchandise, $8500; contracts for work and materials, net value, $5000; bills and accounts receivable, net value, $2500; good will and trade name of business, $2500; total, $50,000. It also appears that the South Chicago Architectural Iron Works showed an indebtedness at the time of the transfer of about $12,500, which amount was not taken into account nor reported in the report of the new company to the Secretary of State.

About three months before the re-organization of the business a trial balance was made by the old company, showing the value of real estate to be $9147.43; machinery, about $8000; accounts receivable, about $3000; stock on hand at cost; and the entire assets about $27,000. The testimony of the secretary and treasurer of the old company was to the effect that at the time of re-organizing and increasing the capital stock it was found that the old company was worth, after deducting liabilities, about $37,500 and its gross assets were about $50,000. It would appear, also, that shortly after the new company was organized, in May, 1912, profit and loss of the new company was credited with $12,500, which was charged to the treasury stock, and the treasurer testified that $11,400 in the treasury prior to that time brought the total of treasury stock up to $23,900. On the last day of May, 1912, an audit was made from the beginning of the business to that date, which would presumably not be greatly different from the condition at the time of the new organization. The testimony of some of the witnesses was to the effect that they thought the new company was prospering up to about the time it went into bankruptcy, appellant apparently being one of its largest creditors. Appellant began in September, 1912, to do business with the organized company and continued to do business with the new company up to the time of the failure. Ap-

pellant's credit man, L. H. Jackson, called the attention of some of the officers of the new company to notes due or coming due, owed by that company, and a conference was held at Jackson's office to see what could be done. An arrangement was made which it was hoped would tide the new company over its difficulties, but these arrangements failed to accomplish the purpose, and in May, 1913, the company went into bankruptcy. Considerable testimony was taken, several witnesses being sworn by both parties, as to whether the assets of the South Chicago Architectural Iron Works turned over to the new company were credited at their fair face value or in excess thereof, in favor of the stockholders of the new company, as paying for their stock in that company. From the evidence in the record we think it was rightly held by the Appellate Court that the property so turned over to the new company did not equal in value the par value of the stock in the new company, which was considered as paid for thereby.

It is manifest that the old company, before the incorporation of the new company, was not entitled to the payment of $2500 for its good will, as it is clear that it had not made money, and this court said in *Dee Co.* v. *Proviso Co.* 290 Ill. 252, that if a going concern has made no money no one would pay any more for it because it was going. The court also held in that case that property may be taken in payment for stock, but it must be done by a valid contract of bargain and sale. Payment for capital stock with property is no payment except to the extent of the true value of the property, and if the property is taken at an over-valuation the stockholders are liable to make up the deficiency; and when a failure occurs in the business, the law puts upon the persons who disposed of the assets of a former company to pay for the capital stock of the new company the burden of showing that the property so turned over equaled the value of the capital stock for which it was considered to be paid. The evidence in the record, in

our judgment, shows that the difference between the real value of the property turned over to the new company for new stock and the par value of that stock was more than the amount of appellant's claim.

In April, 1913, a petition was filed in the United States district court to have the Illinois Architectural Iron Works adjudged a bankrupt. Daniel P. Trude was elected trustee. Appellant filed a claim of $7222.44 against the estate. It was allowed and afterwards two dividends were paid thereon, one of 20 per cent and one of 13½ per cent, aggregating, by the claim of appellant, $2419.52. Nothing further has been paid. In April, 1913, the company ceased doing business, and after the above dividends were declared the trustee reported that the assets of the company were exhausted. The trustee made no attempt to collect any stock liability from the stockholders, and did not include in his report any claim based on the fact that the property turned over by the South Chicago Architectural Iron Works was insufficient to pay the full value of the stock in the new company issued to appellees. The master found that the defendant stockholders became liable to the creditors of the new company for the unpaid balance of their stock, amounting to $25,000, but also found that the right to recover for the unpaid balance vested in the trustee in bankruptcy, and that appellant had no right to recover for the same except through the trustee. The recommendations of the master were, in effect, sustained by the superior court in this regard by the decree entered in this case and also by the holding of the Appellate Court. This leaves the most serious question in the case to be considered,—that is, the correctness of the rulings of the trial and Appellate Courts, to the effect that the exclusive remedy to recover on account of over-valuation of the property turned over in the payment of stock vested alone in the trustee in bankruptcy, or whether the creditors of the bankrupt company had a right themselves to recover the difference between the real value of

the assets turned over and the amount at which the assets were valued in paying for the stock issued to appellees.

Section 47a of the National Bankruptcy act, as amended in 1910, in part reads as follows: "And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied." (9 U. S. Comp. Stat. Ann. 1916, p. 11458.) Section 70 of the same act, as revised in 1910, reads: "The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, * * * to all * * * (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. * * * The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication." (9 U. S. Comp. Stat. Ann. 1916, p. 11719.)

The question whether appellant and other creditors of appellees have the right to institute an action to recover on account of the over-valuation depends upon the statutes of this State as construed by the courts of this State. (*Converse* v. *Hamilton,* 224 U. S. 243.) The particular provisions of the statutes that were in force at the time and that should be considered in deciding this question are sections 8 and 25 of the Corporation law, which read as follows:

303-12

"Sec. 8. * * * Each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him. * * * Whenever any action is brought to recover any indebtedness against the corporation, it shall be competent to proceed against any one or more stockholders at the same time to the extent of the balance unpaid by such stockholders. * * * Every assignee or transferee of stock shall be liable to the company for the amount unpaid thereon, to the extent and in the same manner as if he had been the original subscriber." (Hurd's Stat. 1917, p. 701.)

"Sec. 25. If any corporation * * * shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his *pro rata* share of · such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation." (Hurd's Stat. 1917, p. 703.)

This court does not seem to have been required heretofore to pass on the construction of sections 8 and 25 as applied to a business after it has gone into bankruptcy. Perhaps the case most nearly in point in construing these sections under conditions such as arise here is that of *Parmelee* v. *Price,* 208 Ill. 544. That was a case where a creditors' bill had been instituted under the Chancery act to enforce the liability of certain stockholders with reference to unpaid subscriptions for stock, and the court said (p. 554) : "It appears from the bill that the stock of appellees was paid for partly in cash and partly in property, and that this property was fraudulently over-valued to such an extent that, in fact, only forty per cent of the subscription was paid. While this transaction was voidable as to creditors or other stockholders prejudiced thereby it was binding upon the corporation." (Citing authorities.) And

again the opinion says, on page 555, that under section 8 the stockholder "is directly liable to the creditor whether the assets of the corporation are sufficient to pay its debts or not. The creditor can collect either from the corporation or from the stockholder, as he sees fit. * * * The creditor may sue the corporation and garnish the stockholder at the same time. * * * This, however, is where the stockholder is still liable to the corporation. It is for the unpaid portion of his subscription. In such case an action accrues to the creditor and against the stockholder as soon as the debt * * * falls due. * * * In the case at bar, however, no right of action accrued to the creditor under section 8, *supra,* for the reason that as between the corporation and the stockholder the stock subscription was fully paid." And again, on page 559 the opinion continues: "We hold that a right of action accrues to a creditor against a stockholder whose stock, as between the shareholder and the corporation, has been paid for by property taken at a fraudulent over-valuation, whenever the corporation ceases doing business leaving debts unpaid, and that the creditor may proceed immediately to enforce this right of action in equity, under section 25, *supra,* without first reducing his claim against the corporation to judgment at law. The liability of the stockholder resides in the fact that he has subscribed for and taken stock for which the law requires he should pay, in money or property, the full amount of his subscription. * * * His liability * * * is not dependent upon any call being made upon him by the corporation, as in case where the corporation seeks to collect the same, but is a liability resulting from the statute, consequent upon the fact that he is a shareholder."

It would appear from this decision that the court construed sections 8 and 25 as holding that a stockholder is directly liable to the creditor without any action on the part of the defunct corporation, or the trustee or receiver if one was appointed for the corporation after its failure,

and under these sections of the Corporation act, and others which are somewhat similar in wording on the question here involved, this court in other decisions has substantially held to the same effect. Thus, in *Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118, the court said (p. 121) : "It is manifest, however, that the statute provides a remedy in the nature of a creditor's bill and is designed to aid creditors in the collection of their debts." And again, on page 123 of the opinion: "We think it is clear that it was the intention of the legislature, by the enactment of section 25, to afford remedies to creditors of corporations for the enforcement of their private and personal rights." And later, on page 125 of the opinion it is stated: "The apparent scope of the section is merely to provide remedies to individuals for the enforcement of private and personal rights."

In *Alling* v. *Wenzel,* 133 Ill. 264, in construing section 25 of the Corporation act, the court said (p. 272) : "Section 25 authorizes creditors of the corporation to bring suits in equity against the corporation and stockholders to enforce the liability of the latter if the corporation * * * shall dissolve or cease to carry on its business as therein provided. The liability of the stockholder is for his unpaid stock. To the extent it is unpaid he is liable for the debts and obligations of the corporation."

In *Wincock* v. *Turpin,* 96 Ill. 135, in discussing another section of the Corporation act, the court said (p. 142) : "The statute having conferred the right on the depositor, it is as absolutely his individual claim as any claim he may hold against any other individual for or on account of any business transaction."

In *Tibballs* v. *Libby,* 87 Ill. 142, the court, in discussing the liability under the Corporation act of the stockholder for a corporation debt, said (p. 145) : "We take no note of the bankruptcy proceedings, as they cannot affect plaintiffs' rights. Their right to recover against a stockholder

is not taken away by the bankruptcy of the corporation in which he was a stockholder. That fact fixes the liability of the stockholder."

In *Arenz* v. *Weir*, 89 Ill. 25, in passing on another section of the Corporation act this court said (p. 28) : "This insurance company having passed to a receiver, diminishes in no degree the liability of a stockholder to a creditor of the company. The creditor stands on an independent platform above that of the receiver, having no concern with the corporation, and the stockholder is bound, under the law, to answer to him."

Counsel for appellees endeavors to evade the force of the statements of some of these opinions by suggesting that the sections of the Corporation act there under consideration provided for a double liability against the stockholders and were penal in their nature. An examination of those decisions will show that they were not based on the question that the statute would require a double liability or a penalty, but because the statute provided that this obligation rested upon the stockholder for the benefit of the creditor, and the wording of sections other than sections 8 and 25 referred to in some of these decisions is not so materially different from the wording of section 25 that we think the liability of the stockholder to the creditor was intended to be held as any different in character from that provided for in section 25. The reasoning of this court in *Golden* v. *Cervenka*, 278 Ill. 409, while not with reference to the construction of the provisions of the Corporation statute here under consideration, tends to uphold the conclusion that under section 25 the liability of shareholders was enforcible directly by the creditors.

Counsel for appellees endeavors to show that the decisions of this court in *Coleman* v. *Howe*, 154 Ill. 458, *Garden City Sand Co.* v. *American Refuse Crematory Co.* 205 id. 42, *Sprague* v. *National Bank of America*, 172 id. 149, and *Johnson* v. *Canfield-Swigart Co.* 292 id. 101, lay down a

doctrine at variance with the claim of counsel for appellant on the question now under discussion. We have examined all of the authorities on this question, and think none of them, when fairly construed, uphold appellees' contention that any claim on account of unpaid subscriptions, arising because of over-valuation, is an asset of the corporation that should go into the hands of a trustee and be collected by him. As was said by this court in *Garden City Sand Co.* v. *American Refuse Crematory Co. supra,* on page 48: "In such a case the corporation may agree with the stockholder as to the value of the property to be taken in payment for the stock, but the transaction must constitute a valid contract of bargain and sale in good faith, in the exercise of fair and honest judgment." And again, in *Sprague* v. *National Bank of America, supra,* the court said, one page 166: "An accounting as to the value of such property and effects and of its obligations to its creditors will determine the net value of the property and effects received by the Pacific Company. In so far as the property and effects of the cable company exceeded the indebtedness of the company the stock in the Pacific Company should be deemed paid. Therefore the position of each appellant who held stock interest in the California corporation is, that instead thereof he is the holder of stock in the Illinois corporation paid up to the extent of the net value of his interest in the property and effects which were transferred from the California corporation to its successor, the Illinois corporation, and to that extent only, and therefore liable to the creditors of the latter corporation to the extent his stock is unpaid."

The argument of counsel for appellant is that the right of the trustee in bankruptcy to sue the stockholders depends upon whether the liability of a stockholder for the unpaid portion of his subscription was an asset of the corporation, and that if it was an asset, then it is clear the corporation before and the trustee after bankruptcy could sue to recover

it. If it was not an asset the corporation could not bring suit, nor could the trustee do so after bankruptcy. In this case the stockholders, as individuals, after they had subscribed for their stock in the new company, without placing any value upon the property and business of the old company, offered it to the new corporation in full payment of their subscriptions, which offer, while acting as directors of the corporation, they accepted, and they were thereby released, as subscribers, from all liability to the corporation, but if they over-valued the property they were liable to the creditors for such over-valuation but not to the bankrupt corporation or to its trustee. This conclusion seems to be in accord with the decisions of this court in cases where it has passed directly or indirectly on this question. Many of the States in this country other than Illinois have statutes more or less similar to ours on this question. In some of them the statute gives the right of action to the corporation or to its creditors, and in discussing these statutes and the rights of the creditors under them in Thompson on Corporations (vol. 2—2d ed.—sec. 1372,) that author says: "Under these statutes, almost without exception, the liability imposed is to the creditor. * * * Under all such statutes it is a self-evident proposition that the party in whose favor the liability is imposed has the right of action to enforce it. * * * Whether a receiver can maintain an action must depend, in the main, on the terms of the particular statute. If the statute makes the penalty a debt due to the corporation for a breach of duty on the part of the directors toward the corporation, then it is clear that the receiver, who succeeds to the right of the corporation, can maintain the action. The real test as to this right to sue would probably depend on the question whether the penalty is made by the statute a part of the corporate assets which it is the duty of the receiver to collect and distribute ratably among all the creditors, or whether the penalty is made a debt due from the directors jointly or severally to

any creditor of the corporation." After construing some of the statutes in other jurisdictions, the Federal and other courts have held that the right to collect rests with the creditor and not with the trustee in bankruptcy. (See *Courtney* v. *Georger*, 228 Fed. 859; *Babbitt* v. *Reed*, 236 id. 42; *Breck* v. *Brewster*, 153 App. Div. 800.) And in a very recent case the Federal court of appeals in construing the Illinois statute, after considering at some length the statute and decisions of Illinois and other courts on this question, held in *Seegmiller* v. *Day*, 249 Fed. 177, that the liability created under this statute was personal to the creditors, one which could not be invoked by the corporation, did not become an asset of the bankrupt estate and is not enforcible by the trustee. The conclusion of the Federal court in that case is in full accord with the conclusion of the Federal court in *In re Beachy & Co.* 170 Fed. 825, where the Illinois statute was also construed, and it was stated (p. 828) : "It seems clear, therefore, that this statutory cause of action belongs exclusively to the creditors. * * * Such a claim may be enforced by the creditor in any court having jurisdiction quite independently of the bankruptcy proceedings."

Necessarily the decisions just referred to from the Federal courts are not controlling here, because the Federal courts have repeatedly decided that the decisions of the State courts in construing their own statutes on such a question as this are controlling on the Federal courts, but those decisions are in a way persuasive, because they show the judgment of at least two Federal courts as to the construction that would *prima facie* be placed on the Illinois statute on this question, and in our judgment the construction given the statute by the Federal courts in the two cases just referred to is the fair one, and also in full accord with what has been said by this court whenever called upon to construe these or similar sections of the Corporation act.

Counsel for appellees relies very strongly upon the decision of this court in *Lane* v. *Nickerson,* 99 Ill. 284. It is clear from a reading of the opinion in that case that the liability against the stockholder was for the balance of an unpaid subscription for stock, and was, under the reasoning of the cases already cited, an asset of the corporation, and therefore collectible by the trustee in bankruptcy or the assignee or receiver of the estate and not by the creditors. In view of the facts in that case we do not consider the conclusion reached therein as any way controlling on this question.

The Corporation act of this State was re-written and went into force on July 1, 1919. As re-drawn, sections 8 and 25 were changed and placed under the title of "Insolvency." (Hurd's Stat. 1921, pp. 802, 803.) It is clear that under the re-drawn act it was the intention of the legislature to authorize any creditor to bring suit in equity to enforce the stockholders' liability under the statute for the debts of the corporation. As this amended statute was in force at the time the decree was entered in the trial court in this case, it is obvious that under said act the decree was improperly entered holding that a court of chancery did not have jurisdiction to enforce the claim against the stockholders for the unpaid liabilities of appellant.

The trial and Appellate Courts wrongly construed this statute as giving the right of action to the trustee in bankruptcy. On the contrary, under this statute as here construed, the bill of this creditor should not have been dismissed for want of equity. The conclusion necessarily follows that the judgments of the trial and Appellate Courts must be reversed and the cause remanded to the superior court for further proceedings in harmony with the views herein expressed.          *Reversed and remanded.*