**Sam Howard, Appellant, v. Samuel Insull et al., Appellees.**

**Gen. No. 39,612.**

Opinion filed February 28, 1938.
Petition of appellant for rehearing and modification of opinion as to
Field and Doyle denied March 16, 1938. Petition of appellees for re-
hearing denied March 16, 1938.

ASHCRAFT & ASHCRAFT, of Chicago, for appellant;
CARROLL J. LORD and RUFUS D. BEACH, both of Chicago,
of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of
Chicago, for appellees Samuel Insull and Samuel In-
sull, Jr.

SIDLEY, McPHERSON, AUSTIN & BURGESS, of Chicago,
for appellee Stanley Field; DONALD F. McPHERSON,
GEORGE RAGLAND, JR. and C. BOUTON McDOUGAL, all of
Chicago, of counsel.

DITCHBURNE & LOUNSBURY, of Chicago, for appellees
H. L. Stuart et al.; HARRY S. DITCHBURNE, CHARLES E.
LOUNSBURY and PHILIP H. KELLEY, of Chicago, of coun-
sel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

June 28, 1934, Sam Howard, as trustee in bankruptcy of the estate of Corporation Securities Co. of Chicago, filed his complaint in equity, praying an accounting from the defendants as directors and officers of the Securities company and from the Estate of Edward F. Swift, deceased, who had been a director of the company for a part of the time the corporation was in existence, for the alleged unlawful expenditures and waste of the corporation assets and for personal profits made by certain of the defendants in dealings with the corporate property. The money claimed is in excess of $65,000,000. Two of the defendants, C. B. Stuart and Martin J. Insull, were not served with summons and have not entered their appearance. The executors of defendant Swift's estate were dismissed out of the suit by a decision of the Supreme Court, *People v. Superior Court,* 359 Ill. 612. The other defendants, Samuel Insull, Samuel Insull, Jr., H. L. Stuart, F. K. Shrader, C. W. Sills, C. T. MacNeille, Stanley Field and Edward J. Doyle, each filed motions to dismiss the complaint, for want of equity. They also filed motions to strike certain parts of the complaint. The court did not pass on the latter motions but sustained each of defendants' motions to strike the complaint for want of equity, plaintiff elected to stand on his complaint, the suit was dismissed and plaintiff appeals.

Counsel for plaintiff say that the complaint involves two entirely separate and distinct phases. The first phase deals with certain activities of the Securities Co. during the first four months of its existence; and it is alleged that through the fraudulent direction and action of the officers and directors of the company with respect to four transactions (two purchases by the Securities Co. of large blocks of stock of the Middle West Utilities Co. and two purchases by the Securities

Co. of large blocks of stock of the Insull Utility Investments, Inc.) the assets of the Securities Co. were unlawfully expended, resulting in loss to it and in large personal profit to some of the defendants. The second phase of the complaint, counsel say, deals with various transactions in the later period of the Securities Co.'s existence. And the complaint alleges various purchases of worthless securities from Insull controlled companies, the payment of dividends on preferred stock out of the capital, and the gift of cash to an Insull controlled company, the unlawful subscription to stock syndicates, and the purchase of great quantities of the Securities Co.'s own stock in an effort to support the market for the stock and the "switch" of these stocks at periodical intervals for the stock of Insull Utility Investments, Inc.

Counsel for some of defendants say in their brief that the transactions involved in the first phase of the complaint are: (1) the payment of $9,298,415.60 by the Securities Co. to Insull Utility Investments, Inc., on January 27, 1930, for one-half of a block of common and preferred stock of the Middle West Utilities Co. theretofore purchased by the Insull Utility Investments, Inc., for the joint account of itself and another Insull controlled corporation; (2) the payment on February 15, 1929, of $9,931,400 to the Middle West Utilities Co. for the purchase of a block of its common stock; (3) the payment on October 25, 1929, of $2,437,500 to Halsey, Stuart & Co. for the purchase from said company of preferred stock of the Insull Utility Investments, Inc.; and (4) the payment on January 6, 1930, of $2,803,440 to defendants Samuel Insull, Samuel Insull, Jr., Martin J. Insull and Margaret Insull for the purchase from each of them of common stock of the Insull Utility Investments, Inc.

The Securities Co. was incorporated October 4, 1929, and went into bankruptcy April 18, 1932. The trans-

actions just mentioned took place between October 4, 1929, and January 27, 1930, during which time neither Edward F. Swift, Edward J. Doyle nor Stanley Field was a director or officer of the Securities Co.

The second phase of the complaint sets forth many separate transactions and alleges the purchase of worthless securities of Insull controlled companies, payment of dividends on preferred stock out of capital, the gift of cash to an Insull controlled company, and the unlawful subscription of stock syndicates, the purchase of great quantities of the Securities Co.'s own stock in market support operations, all of which were brought about through the fraudulent direction and action of the officers and directors of the Securities Co., each of which transactions set up in the two phases of the complaint resulted in great losses to the Securities Co., and in personal profit to some of the defendants.

It is further alleged that defendants Field, Swift and Doyle were elected directors of the Securities Co. on June 11, 1930, and continued to act as such until February 15, 1932. It is further alleged in the complaint that the Securities Co. was organized for the publicly announced purpose of purchasing and holding shares of companies whose resources were invested in public utilities, but that it was actually organized pursuant to an agreement entered into between the Insulls, the Stuarts, Sills, Shrader and MacNeille for the purpose of having it secretly purchase from defendants Samuel Insull and Halsey, Stuart & Co., large amounts of stock of the Middle West Utilities Co., which latter company required refinancing, and to bring about this result it was necessary to artificially raise the price of the Middle West stock; that the latter stock was of little or no value; that the stock of the Securities Co. was sold in "units" to numerous investors for more than $34,000,000.

The allegations of the complaint are to the effect that within four months of the formation of the Securities

Co. there had been sold to it stocks of Insull controlled companies costing the Securities Co. nearly $25,000,000; that such stocks were purchased from the Insulls and Halsey, Stuart & Co., and from a syndicate controlled by Samuel Insull; that all of such sales were made for the benefit, gain and profit of such defendants; that such stock at the time of the purchase was of little or no intrinsic value; that such facts were well known to the officers and directors of the Securities Co. who are defendants, and the money paid by the Securities Co. for such purchase has been a complete loss except certain shares of the preferred stock of the Middle West Utilities Co. There are further allegations substantially to the same effect as the second phase of the complaint.

We think it clear the allegations sufficiently charge that the moneys of the Securities Co. were unlawfully expended and wasted and that some of the defendants personally profited by such unlawful expenditures. In these circumstances plaintiff could maintain this suit (sec. 70 of the Bankruptcy Act) unless, as counsel for defendants contend, it has been adjudicated by the Supreme Court in this very case that such an action would not lie. *Howard v. Swift,* 356 Ill. 80; *People v. Superior Court,* 359 Ill. 612. We think defendants' contention cannot be sustained.

In the *Swift* case, plaintiff in the instant case filed his claim against the Estate of Edward F. Swift, deceased, who had been a director of the Securities Co., as above stated, claiming $37,308,646. The Supreme Court held that the probate court had no jurisdiction for the reason that the claim arose out of a tortious act which did not enrich the *tort feasor* and therefore the tort could not be waived and the action brought for money had and received. About two months after the decision in that case the instant suit was brought. The executors of the Swift estate were made defendants. It filed its motion to dismiss the suit, which was denied. There-

upon the representatives of the estate filed an original petition for a writ of prohibition in the Supreme Court to prohibit the further prosecution of the suit in the superior court against the Swift estate. The writ was awarded, the court holding that since it had already decided that the claim filed in the probate court could not be allowed because it was clearly a claim in tort resulting in no enrichment of the *tort feasor,* such decision was *res adjudicata,* and therefore the suit in equity against the estate, based on the same claim, would not lie. After the decision of the Supreme Court the Swift estate was eliminated as a defendant in the instant case, and some time thereafter plaintiff filed an amendment to his complaint, in which it was more specifically alleged that the Insulls, Stuart, Sills and MacNeille made large gain and profits—$1,500,000—from the sale of the stock of the Middle West Utilities Co. There is another allegation substantially to the same effect, in reference to the sale of stock of the Insull Utility Investments, Inc.

Sec. 70 of the Bankruptcy Act provides that the trustee of the estate of the bankrupt shall "be vested by operation of law with the title of the bankrupt" . . . to "Rights of action arising upon contracts or from the unlawful taking or detention of or injury to his property." The authority for a trustee in bankruptcy to maintain a suit such as the one at bar is sustained by 4 Work on Bankruptcy, 3d ed., sec. 1537; *Stephan v. Merchants Coll. Corp.,* 256 N. Y. 418, 176 N. E. 824; *Bynum v. Scott,* 217 Fed. 122; *McEwen v. Kelly,* 140 Ga. 720, 79 S. E. 777.

If the Securities Co. had not gone into bankruptcy it could have maintained a suit to recover the loss it sustained, provided the allegations of the complaint were proven. (*Dixmoor Golf Club v. Evans,* 325 Ill. 612.) In these circumstances the trustee in bankruptcy can maintain the instant case. But counsel for defendants

say that no recovery can be had for the alleged wrongful payment of dividends, because the remedy in such case is governed by the Illinois statute, which confers the right of action on the creditors; and reference is made to section 23, ch. 32, Cahill's Ill. St. 1931, which provides that ''The directors shall jointly and severally be liable for the debts and contracts of the corporation. . . . For declaring or assenting to a dividend if the corporation is, or is thereby rendered insolvent, or its capital is thereby impaired to the extent of such dividend,'' and *Seegmiller v. Day,* 249 Fed. 177; *Ryerson & Sons v. Peden,* 303 Ill. 171, and other cases are cited.

In the *Day* case, he, as trustee of a bankrupt corporation, brought suit to recover unearned dividends illegally paid from the capital stock of the corporation when insolvent to defendant as a stockholder; he also sought to recover from defendant and other directors unpaid stock subscriptions, and prayed other relief not important here. There was a decree in his favor which was taken to the Circuit Court of Appeals, where that part of the decree in the trustee's favor for the amount of the unearned dividends and the unpaid stock subscription was affirmed. The decree in other respects, not important here, was reversed. In that case Judge Alschuler in delivering the opinion of the court quoted section 19 (which is now substantially the same as section 23) and said (p. 181.) : ''Without prejudice to the right of any creditor to pursue his remedy under section 19, the decree, in so far as it finds and imposes liability thereunder for the debts of the corporation, is reversed, and in the other respects, viz. as to the liability for dividends declared and paid to the defendants in the action, and liability for unpaid stock subscriptions, it is affirmed.'' We think this case is authority for the proposition that the unearned dividends can be recovered by the trustee.

In the *Ryerson* case (303 Ill. 171), property had been turned in to a corporation in payment of certain stock subscriptions at an overvaluation. Afterward the corporation went into bankruptcy and part of Ryerson's claim against the corporation remaining unpaid he filed a bill in equity against the company and ''all its stockholders, charging that the company ceased doing business leaving debts unpaid; that the stockholders of the company, while acting as directors, had accepted from themselves property in full payment of their subscriptions for stock which was of far less value than the par value of the stock for which they had subscribed, and therefore, under the provisions of the Illinois Corporation act, the company and stockholders were liable.'' And it was held that suit could be maintained directly by the creditors after the failure of the corporation, and that the right to enforce such liability was not an asset of the corporation to be turned over to the trustee in bankruptcy. The court there construed section 25 of the Corporation Act which provided that if any corporation dissolved or ceased doing business leaving unpaid debts, ''suits in equity may be brought against all persons who were stockholders at the time, or liable in any way for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his *pro rata* share of such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation.'' The court then discusses *Parmelee v. Price,* 208 Ill. 544, which was a creditor's bill to enforce liability against certain stockholders for unpaid subscriptions of stock, and quoted from that case, ''It appears from the bill that the stock of appellees was paid for partly in cash and partly in property, and that this property was fraudulently overvalued to such an extent that, in fact, only forty per cent of the subscription was paid. While this transaction was voidable as

to creditors or other stockholders prejudiced thereby, it was binding upon the corporation. . . . (p. 179.) The creditor can collect either from the corporation or from the stockholder as he sees fit. . . . This, however, is where the stockholder is still liable to the corporation. It is for the unpaid portion of his subscription. . . . In the case at bar, however, no right of action accrued to the creditor under section 8 [of the Corporation Act] for the reason that as between the corporation and the stockholder the stock subscription was fully paid.''

We think it clear that the *Ryerson* case is not in point. There Ryerson, a creditor, was suing a stock-subscriber because he had not fully paid for his stock by reason of overvaluation of the property which he turned in for the stock. It was held that such valuation was binding upon the corporation but not on the creditor. The facts in that case are not at all similar to the facts in the case before us.

We think the complaint in the instant case states a cause of action (*Manning v. Campbell*, 264 Mass. 386) against all the defendants except Doyle and Field. The charges made in the complaint against these two defendants are similar to the charges made against the Swift estate. Doyle, Field and Swift were directors of the Securities Co. during the same period of time. There is no charge in the complaint, nor in the amendment, that either Doyle or Field made any personal profit from any of the transactions, and in these circumstances we think the decisions in the *Swift* cases, 356 Ill. 80, and 359 Ill. 612, are controlling.

The decree of the superior court of Cook county, in so far as it dismissed the suit as to defendants Doyle and Field, is affirmed. In all other respects it is reversed and the cause remanded.

*Affirmed in part, reversed in part and remanded.*

McSurely and Matchett, JJ., concur.