### AIKEN et al. v. INSULL et al.

### No. 7430.

Circuit Court of Appeals, Seventh Circuit.

Aug. 22, 1941.

Rehearing Denied Oct. 1, 1941.

See, also, 122 F.2d 755.

Edmund D. Adcock, Roger Q. White, and Lewis F. Jacobson, all of Chicago, Ill., for appellants.

Floyd E. Thompson, Edward J. Farrell, and Walter Brewer, all of Chicago, Ill., for appellees.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

In this case plaintiffs, on their own behalf as owners and holders of corporate debentures and on behalf of all other owners and holders of such debentures and all other creditors who desired to join in the suit and share the costs thereof, sought an accounting from the defendants, directors of the Insull Utility Investments, Inc., for the wrongful pledging of assets in violation of certain debenture covenants and for the improper declaration of dividends. The defendants interposed an affirmative defense and moved for summary judgment against the plaintiffs, filed under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The District Court sustained the motion, dismissed the complaint and entered a decree in favor of the defendants. From that decree this appeal is prosecuted.[1]

The complaint filed on February 3, 1933 alleged that I.U.I. was incorporated under the laws of Illinois to acquire, dispose of, underwrite and deal in securities and to do a general investment business; the election of the defendants as directors; the composition of the Executive & Finance Committees; the issuance of certain debentures aggregating approximately $66,000,000 and the sale thereof. The debentures were long term, interest bearing obligations of $1,000 each, unsecured except for restric-

---

[1] In this opinion Insull Utility Investments, Inc., will be designated as I.U.I.

tive covenants on the power of I.U.I. to borrow and pledge.[2]

The complaint further alleged that the defendant directors of the I.U.I. induced and caused I.U.I. to borrow about $45,-000,000 from certain Chicago and New York banks, and induced and caused I.U.I. to pledge with said banks substantially all its assets as collateral to said loans without securing the outstanding debentures equally and ratably with such loans and without securing them whatsoever, and that neither all nor any of said loans was made for a period not exceeding one year.

The complaint also alleged that on April 16, 1932 an involuntary petition in bankruptcy was filed against the I.U.I., that it was on September 22, 1932 adjudicated a bankrupt, and on March 7, 1937 Harry A. Bigelow was appointed trustee of I.U.I.

After the adjudication in bankruptcy, class suits were brought by some of the debenture holders against the New York and Chicago banks. Generally these complaints were alike in substance and charged that the lenders knew, when they made the loans and took the pledged assets, that the debentures were outstanding, that they contained restrictive covenants on the power of I.U.I. to borrow and pledge, and that the covenants were being violated by the loans made. The purpose of the suits was to establish equitable rights in the assets which had been pledged.

The Chicago bank suits were filed in the United States District Court for the Northern District of Illinois, Eastern Division, and consolidated by order of Court under the title of Case No. 12,357, but were never tried. The New York bank suits were tried in the United States District Court for the Southern District of New York, and were dismissed for want of equity, but the order of dismissal was reversed and the case remanded. Kelly v. Central Hanover Bank & Trust Co. et al., D.C., 11 F.Supp. 497; Id., 2 Cir., 85 F.2d 61. In addition there were pending the preference suits filed by the trustee in bankruptcy against the banks, and the instant suit filed by the debenture holders against the directors of I.U.I.

During 1933 motions to dismiss the complaint were filed by various defendants. Thereafter no further important steps were taken in the case until October 2, 1939 when defendants filed their amended motion for summary judgment, claiming, among other grounds, that the cause of action against them was barred.

In the meantime settlement negotiations had ensued which related to the many cases then pending against the banks, resulting in an agreement whereby all the claims of the banks and all other claimants, except the debenture holders, were withdrawn in the bankruptcy proceeding, and the claims of the trustee in bankruptcy and of the debenture holders against the settling banks were released. In addition to the withdrawal of their claims against I.U.I., aggregating $42,887,500, the banks agreed to pay the sum of $3,435,088 to the debenture holders. In these negotiations the defendant-directors took no part and they had nothing to do with fixing the amount which the debenture holders elected to accept in satisfaction of the injury done to I.U.I.

The settlement took the form of a petition embodying its terms, which was filed with the District Court having charge of the Chicago bank suits and of the bankruptcy case of I.U.I. On November 4, 1937, the District Court approved the petition, and in part (4) of its decree stated that "The settlement and compromise set forth in paragraph 26 of said petition is

---

[2] The covenants incorporated in the Series B. Debentures, the second issue for $60,000,000, are pertinent in the instant case, and they read as follows:

"The Company hereby covenants and agrees with the holder hereof that so long as this debenture shall be outstanding and provision for the payment thereof shall not have been made, it will not mortgage or pledge any of its property unless the instrument creating such mortgage or pledge shall provide that this debenture shall be secured thereby equally and ratably with all other obligations issued or to be issued thereunder, except that the Company without so securing this debenture

(a) may at any time mortgage or pledge any of its property for the purpose of securing loans to the Company contracted in the usual course of business for periods not exceeding one year, and (b) may, in order to secure the purchase price or part thereof of any property which it may hereafter acquire, mortgage or pledge any or all of such acquired property. The Company further covenants and agrees that so long as this debenture is outstanding * * * (b) it will not create or assume any additional indebtedness if as a result thereof its total indebtedness will exceed 50% of the then value of its assets.

fair, just and equitable." On February 24, 1938, an order was entered in the consolidated case No. 12357, which confirmed the settlement, vested title to the collateral in the Chicago banks and enjoined the debenture holders from the prosecution of further suits against the banks. On the same day an order was entered in the bankruptcy case of I.U.I., which confirmed the settlement and approved the action taken by the trustee in bankruptcy in withdrawing and releasing claims he had formerly asserted against the banks.

In the instant case as before noted the defendant directors of I.U.I. are charged with the tort of inducing a breach of contract. The complaint states that they caused the corporate covenantor to violate the debenture clauses limiting borrowing and pledging.

■ The question naturally arises as to the part played by the lending banks in the harm resulting to the covenantees. In this connection the fact stands out that the complaints in the settled bank cases state in substance the same matter as does the complaint in the case at bar. In our view the banks have contributed substantial assistance to the directors in the production of the resulting tort. According to Illinois law, "It is enough if they were both liable for the same injury," Chapin v. Chicago & E. I. R. Co., 18 Ill.App. 47, 50, and neither conspiracy nor concert of action is necessary. We agree with the District Court's expression that "The joint action of each was necessary to the consummation of the wrong."

■ The plaintiffs would minimize the aid given by the banks in the commission of the tort, by arguing (1) that the directors were trustees and hence the liability sought to be enforced is not that of tort-feasors, and (2) that the claim against the banks in the settled cases might not have been grounded properly. It will be enough to say that the I.U.I. was not a bank or a trust company, but a going concern at the time. Under the circumstances we do not perceive upon what principle the directors could have been considered as trustees of I.U.I.'s creditors. See People v. Superior Court, 359 Ill. 612, 619, 195 N.E. 517; Gottlieb v. Miller, 154 Ill. 44, 50, 39 N.E. 992; see also Kelly v. Central Hanover Bank & Trust Co., D.C., 11 F.Supp. 497, 509. The cases cited by the plaintiffs do not compel a conclusion to the contrary. As to point (2), it is obvious that the bank settlement can not be thus explained away and that it is conclusive on whether the banks participated in the wrong. See Chapin case supra, 18 Ill.App. at page 51.

■ The defendants meet the complaint against them with the answer that the bank settlement operates to discharge them from liability. They rely on the strict common law principle that a release to one of several joint tort-feasors is a release to all, irrespective of the intent. Unquestionably this technical rule of release, as applied to joint wrongdoers, is followed in Illinois. Wallner v. Chicago Traction Co., 245 Ill. 148, 91 N.E. 1053; Gilbert v. St. Louis, S. & P. R. R., 220 Ill.App. 51; Stanley v. Leahy, 87 Ill.App. 465.

■ To be sure, a covenant not to sue is not the same as a release, and has no effect upon the liability of the other wrongdoers to the injured person, a fact which is recognized by the Illinois case-law. City of Chicago v. Babcock, 143 Ill. 358, 366, 32 N.E. 271. Usually in the tort cases the controversy is whether the settlement agreement constitutes a release or is merely a covenant not to sue. West Chicago St. R. R. v. Piper, 165 Ill. 325, 46 N.E. 186; Welty v. Laurent, 285 Ill.App. 13, 1 N.E. 2d 577; Chicago & A. Ry. v. Averill, 127 Ill.App. 275. Compare Petroyeanis v. Pirola, 205 Ill.App. 310, and Gore v. Henrotin, 165 Ill.App. 222.

■ We take it, however, that the harsh rule as to a release of one joint tort-feasor does not prevail in the contract cases. Parmelee v. Lawrence, 44 Ill. 405; Nickerson v. Suplee, 174 Ill.App. 136. According to the Parmelee formula, if there is language in the release of a joint debtor manifesting an intent to preserve the releasor's rights against the other co-obligors, effect is given to this manifestation. Strange though it may seem, the Illinois courts have not seen fit to extend this wholesome and common-sense formula to the tort cases. We fail to see a good reason for drawing this distinction between joint tort-feasor cases and joint debtor cases, compare Brown v. City of Cambridge, 3 Allen 474, 85 Mass. 474, 477, but we must accept the limitation fixed by the Illinois courts. We observe an encroachment on, or a possible exception to, the limitation above mentioned, in the case of Van Meter v. Gurney, 251 Ill.App. 184. There it appears that the court justified the application of the Parmelee rule of construction to a release given to one of two joint tort-

feasors after judgment, on the theory that "The claim in tort is merged into the judgment which is a debt". 251 Ill.App. page 187.

■ In our case the settlement agreement, read in its background of approval orders and confirmation decrees, discloses very definitely that the parties intended to settle and compromise the cause of action sued on, in so far as the banks were concerned. The debenture holders and the trustee in bankruptcy not only released their claims for damages against the banks, but they waived whatever interest they had in the collateral and confirmed title thereto in the banks. In return the banks cancelled the bank indebtedness of I.U.I., waived their claims against the estate of the bankrupt corporation, and paid almost $3,500,000 in cash. There can be no real controversy as to whether the settlement and compromise agreement was a release to the banks or merely a covenant not to sue the banks. We are satisfied that in substance (actual intent) as well as in form (language employed), the instrument constituted a release.

The controversy resolves itself into whether certain language contained in one paragraph of the release instrument, manifesting an intent to reserve the cause of action against the directors of I.U.I., is to be given effect. This paragraph provides that "Nothing in this agreement of settlement and compromise * * * shall be construed to operate as a release or to affect any causes of action, claims or demands * * * against any person * * * other than any party to this settlement and compromise * * *" Of course the plaintiffs urge the application of Parmelee v. Lawrence, and the defendants the technical common law rule of release.

■ We need only add, on the strength of our case-law analysis made earlier in the opinion, that the Parmelee formula is not applicable in tort cases. Hence we are compelled to conclude, as did the District Court, that the reservation of the cause of action against the former directors of I.U.I. was void because repugnant to the operation of the release. We believe, as do the plaintiffs, that Section 885 of the Restatement of the Law of Torts (1939), which has modified the Illinois rule of release, is the superior view in these matters, but our task is to apply the local law, not the Restatement.

The complaint also charged the defendants with the violation of § 23 of the Corporation Act (1919).[3] It alleged that on December 13, 1931 the liabilities of I.U.I. exceeded the fair market value of its assets and that I.U.I. was insolvent; that during 1929, 1930, 1931 and 1932 it had no surplus, but nevertheless paid cash dividends during each of these years on all classes of its preferred stock; that certain of the defendants served as members of the Executive Committee, and that all of the defendants constituted the Board of Directors continuously during the period in question; that the Executive Committee first authorized and directed the payment of the cash dividends above mentioned and that the Board of Directors then authorized or ratified this action. For instance, on January 9, 1932, at a meeting of the Board of Directors, at which all of the directors were present except two specifically named, a resolution was unanimously adopted approving the action of the Executive Committee in declaring a cash dividend payable as of January 2, 1932. The District Court, in his memoranda of holdings, indicated that he did not consider the allegations concerning the improper payment of dividends sufficient in detail. Thereupon the plaintiffs asked leave to file amendments to the complaint, but leave to amend was denied because of the lapse of time between the filing of the original complaint and the offering of the amendment.

The proposed amendments show in complete detail the part played by each defendant with respect to the authorization, declaration, approval, or ratification of each dividend. They show the details of

---

[3] Laws of Illinois, 1919, p. 321: "The directors shall jointly and severally be liable for the debts and contracts of the corporation in the following cases:

"(1) * * * ;

"(2) For declaring or assenting to a dividend if the corporation is, or is thereby, rendered insolvent, or its capital is thereby impaired, to the extent of such dividend;

"(3) * * *.

"Unless a director was absent from the meeting at which such dividend was declared or loan made, or unless his dissent therefrom shall be entered on the corporate records, he shall be conclusively presumed to have assented thereto." Smith-Hurd Stats.Ill. c. 32, § 157.42 note.

the dividends declared, the dates of the directors' meetings at which they were declared, the names of the directors present at each meeting and the voting therefor, the amount of the dividends so declared, and that at all of the times at which the dividends were paid, I.U.I. was wholly and irretrievably insolvent and that the dividends impaired the capital of the company.

In considering the question presently discussed, it is not, we believe, unreasonable to suppose that directors of a corporation ought to know whether the actual earnings authorize the withdrawal of the corporate assets to pay a dividend, since they alone are responsible for the declaration of dividends even though they may have delegated the power to a committee of their own.

The statutory liability is conditioned upon the presence of two essential elements, namely, (1) the "declaring or assenting to a dividend" on the part of the corporate directors, accompanied by (2) the insolvency of the corporation or the impairment of its capital. This liability exists only if the directors voluntarily and affirmatively participate or cooperate in the wrongful payment of dividends. See Lewis v. Montgomery, 145 Ill. 30, 33 N.E. 880; Slater v. Taylor, 241 Ill. 102, 89 N.E. 271; McCutcheon-Gerson Service v. Tire & R. Co., 236 Ill. App. 261. Manifestly, this would occur if the directors played a voluntary part in the declaration or creation of the dividend, or if they approved of or assented to its creation.

The defendants assert in this connection that the original complaint is fatally defective in that it fails to charge the directors with "declaring or assenting to a dividend." Stated differently, they claim that the complaint alleges ratification after the fact rather than assenting to the fact. It is plain to us that the word "assenting" includes the approval and ratification of a dividend after it has been declared. Even more plain to us is that the case-law, cited above and relied upon by the defendants, does not support the reasoning advanced by them. In the Lewis case the evidence failed to show that the various expenditures authorized by the Board of Directors resulted in any excess indebtedness, the meetings of the Board were most irregular and conducted in a perfunctory manner, and the complete control of the corporation's business affairs was in Warren, one of the directors, whose participation invited the application of the statute as to him. The Slater and McCutcheon-Gerson cases are consistent with the Lewis decision, and show our view of the statute to be the true one. Even if we adopted the narrow construction urged by the defendants, we would be inclined to hold that the complaint sufficiently charges the directors on the Executive Committee with the statutory liability. The defendants also rely on Western Mortgage & Guaranty Co. v. Gray, 215 Cal. 191, 8 P.2d 1016, 80 A.L.R. 866, but the case is not inconsistent with our view in the matter.

Nor do we deem it reasonable to condemn the original complaint because it fails to allege in specific language insolvency or impairment of capital at the time of the dividends. It is true that the allegations in this regard are stated generally, but under Illinois law this is sufficient. See Kelley v. Baggott, 273 Ill.App. 580, 586, 587. From a reading of the original complaint in its entirety, it is our conclusion that it sufficiently describes a cause of action against the defendants for the violation of § 23 of the Corporation Act of 1919. We agree with the District Court that it tends to be deficient in details, but we are satisfied that it is not fatally deficient in any essential.

It follows from what has been said that the District Court erred in dismissing the original complaint. Immediately thereafter the Court denied plaintiffs' leave to amend on the ground that the amended pleading was presented too late. Without more, a lapse of seven years between the filing of a complaint and the motion to amend, would seem to justify a ruling of denial. But this record conclusively shows that neither side moved to dispose of the original complaint prior to 1939, that the period between 1933 and 1939 was devoted in the main to the disposition of the bank cases and their settlement, and that in truth the delay was agreed to by both sides. Since the delay was the result of circumstances fully acquiesced in by the defendants, and since we have held that the original complaint is not fatally defective, we are compelled to the further conclusion that the District Court erred in denying leave to amend. Nor can the defendants claim prejudice due to the delay. We believe that their argument relating to the burden of de-

754

fense is far-fetched, and that the cases they cite against the allowance of an amendment, based on the statute of limitations, are not applicable in this situation, because in our view the amendments did not change the plaintiffs' claim nor present a different theory of liability. They merely stated the matter of the original complaint more fully. Under such circumstances the amended pleading will not be held to state a new cause of action, nor will it serve defendants in a claim of surprise or prejudice.

The defendants devote much time to other points, but which were not mentioned in the District Court's memoranda of holdings. We have considered these points fully, but find they do not change the conclusions we have already reached. A brief discussion, however, will accompany their disposition.

■ It is true that the liability under § 23 of the Corporation Act of 1919 is personal to the creditors, and a suit to enforce the liability must be brought by one or more creditors on behalf of all creditors. Ryerson & Son v. Peden, 303 Ill. 171, 184, 135 N.E. 423, 24 A.L.R. 1273, Secgmiller v. Day, 7 Cir., 249 F. 177, 179. See also Low v. Buchanan, 94 Ill. 76, and Woolverton v. Taylor, 132 Ill. 197, 23 N.E. 1007, 22 Am.St.Rep. 521. This suit was brought on behalf of all creditors.

■ It is argued that the statutory liability is penal in character and hence a suit can not be maintained in equity to enforce such liability. Loverin v. McLaughlin, 161 Ill. 417, 435, 44 N.E. 99, is the authority relied upon by the defendants. The liability imposed by the statute is definitely not penal in character. It is, both in form and substance, a private obligation, similar, in many respects, to that of sureties, and it was intended to afford additional security to the creditors. See Low, Taylor and Lewis cases, supra; Vestal Co. v. Robertson, 277 Ill. 425, 431, 115 N.E. 629 and In re Beachy & Co., D.C., 170 F. 825, 828.

■ It is contended that subsection 2 of § 23 of the Corporation Act of 1919 is unconstitutional because the last sentence of § 23 appears to establish a conclusive presumption of evidence. There is support for the proposition that the legislature does not possess the power to declare what shall be conclusive evidence of fact. Carolene Products v. McLaughlin, 365 Ill. 62, 70, 5 N.E.2d 447. But to us it does not seem

reasonable to say that the essential character of this sentence, and the dependence of the rest of the section, is so pronounced that its unconstitutionality would assure the downfall of the entire section. Without this last sentence, § 23 is not dissimilar in substance to its predecessor, § 16 of the Corporation Act of 1872, (§ 16, c. 32, Hurd's Ill. Rev.Stat.1917), whose constitutionality has never been questioned. Compare § 42 of the Business Corporation Act of 1933 (§ 42, c. 32, Ill.Rev.Stat.1939), which carries over a similar sentence. Manifestly, it can not be said here, as it was said concerning the statute in Chicago Motor Club v. Kinney, 329 Ill. 120, 134, 160 N.E. 163, 169, that "Where the different objects of an act are so dependent upon or so mutually connected with each other in meaning or as conditions, considerations, or compensations for each other that it cannot be presumed the Legislature would have enacted the provisions designed to secure one of the objects without the provisions for the other, the invalidity of the latter renders the whole act void." We conclude, therefore, that, under Illinois law, the validity of § 23 will not be made to stand or fall on the constitutionality of its last sentence. Subsection (2) of § 23, which thus far is the only part of the statute invoked in this case and whose constitutionality has not been questioned except indirectly through the last sentence, will be measured by its own shadow. No more need be said at this time, for obviously the question remaining is premature from the standpoint of injury.

■ It is claimed that the pleadings fail to allege facts which show that the requisite jurisdictional amount is involved. The record does not support this claim, especially as to the cause of action based upon the wrongful payment of dividends, which is a representative suit. Low v. Buchanan, 94 Ill. 76, 80; Woolverton v. Taylor, 132 Ill. 197, 207, 23 N.E. 1007, 22 Am.St.Rep. 521; Lewis v. Montgomery, 145 Ill. 30, 47, 33 N.E. 880; In re Beachy & Co., D.C., 170 F. 825, 828. The complaint as to this cause of action contains a formal allegation of jurisdictional amount and discloses facts from which the amount of a paid dividend may be determined. The plaintiffs' Counter Motions, Answers on Facts, and the amended pleading also allege facts which clearly show that the requisite jurisdictional amount is involved. This showing is sufficient. St. Paul Mer-

cury Indemnity v. Red Cab, 303 U.S. 283, 288, 289, 58 S.Ct. 586, 82 L.Ed. 845; Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413; Mutual Life Ins. v. Thompson, D.C., 27 F.2d 753, 755.

The plaintiffs are also charged with the collusive selection of parties plaintiff in order to create an appearance of diversity of citizenship. The record presents a situation where certain creditors having a justiciable interest in the controversy, agreed that several members of their class would cause the suit to be commenced in order to confer Federal jurisdiction. This does not constitute such collusion as would cause the Federal courts to refuse to entertain the suit. New Albany Waterworks v. Louisville Banking Co., 7 Cir., 122 F. 776, 779; Hutchinson Box Board & Paper Co. v. Van Horn, 8 Cir., 299 F. 424, 429; Matter of Reisenberg, 208 U.S. 90, 28 S.Ct. 219, 52 L.Ed. 403. There is no basis in this record for the charge of collusion.

The defendants also challenge the authority of the attorneys appearing for plaintiffs to commence this suit against the directors of I.U.I. The record discloses an instrument which among other things authorizes the attorneys appearing for plaintiffs to "institute, prosecute, join and participate in any and all suits, actions and proceedings in the name of, or on behalf of, the undersigned [plaintiffs] and that you may deem advisable in furtherance of such collection [to collect all moneys due the debenture holders], in any part of the world where such actions may be brought or may at any time be pending." The defendants argue that this language limits the attorneys to the prosecution of actions in assumpsit against the corporation or to the filing of claims against the bankrupt estate. The District Court investigated this matter thoroughly, and concluded that the attorneys for plaintiffs had authority to prosecute these proceedings. We see no reason for disturbing this conclusion.

The debentures in question contained a clause which provided that "No recourse shall be had for the payment of the whole or any part of the principal or interest of this debenture to or against the * * * directors of the Company * * *." The District Court concluded that the "no recourse" clause did not operate as a bar to this action. In addition, plaintiffs negotiated a settlement with four of the defendants, and concededly this settlement as-

sumed the form of a covenant not to sue. The District Court held that the effect of the settlement was a covenant not to sue, and therefore was not a bar to this action. In our opinion the conclusions of the District Court on these two points were correct.

The judgment relating to the wrongful pledges is affirmed. The judgment relating to the wrongful payment of dividends is reversed. The case is remanded with directions to proceed in accordance with this opinion.